This document contains some pages that are of poor quality at the time of imaging.

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 24 2015

Abel Acosta, Clerk

82,558-02

2-17-15

To Whom it may Concern.

I am Debra Kegley Ronnie Hendrick mom. I have called Tabatha at Dewitt County and ask if Dewitt has filled Filed the papers of A-B-C-D that Ronnie sent to them she said yes. Then I called up to Austin and found out that Dewitt has only filed A of the papers he sent. If so why havin't they (Dewitt County) filed the others B-C-D in the proper amount of time as they were suppost to do. I have been told the filling time is 30 day after they Recived the papers work.

I am sening you the papers work Ronnie sent to me. A-B-C-D so you can see what paper work Dewitt County is suppost to file and sent to you.

I am in hopes by me sending this paper work to you that someone will contact Dewitt County to find out why they are not filing this paper work Like they are suppose to do within the proper time Limit.

I will bring you the papers because it is a felony if I copy them, they have broke the Law all the way throw this

do this to others. Please look at all the case and not only what they come up with. If you look you will see all of there stuff the have done to Ronnie & all of us in the family.
Please help

Thank you
Debra Kegley

LEGAL
MAIL

LEGAL MAIL

I called
Dwillet
County
Clark
Tabeth Gardner
2-8-15
They filled
all under
the same #
DISTR.CT. 7p. 12-10-11,741
WR-82,558-01
ABCD

They
have 36 days

They said next
week they will
send it in

It
took
2 week
to get
this
From
Ronnie
in the
mail it
had been
opened

Debra
Kegley



Copy
1st Claim A

# COURT OF CRIMINAL APPEALS OF TEXAS
## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

## INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 2 4 2015

Abel Acosta, Clerk

Rev. 01/14/14

Here is a Letter from Robert
Word for word it a copy

October 3, 2014


Mr. Ronnie Hendrick
no. 01865458
Garza East Transfer Facility
4304 Highway 202
Beeville Tx 78102


R.E. State of Texas v. Ronnie Hendrick
Dewitt County

COPY

Ronnie


   I spoke to your mother yesterday about
the Letter I wrote you with my opinion
of your case, Your mother asked me about
having the Shirt you were wearing the night
Pam was shot analyzed for gunpowder
residue in order to prove your innocence. It
is my understanding from reading the
police reports that the shirt has already
been tested for DNA and that Pam's
blood and your DNA were found on the
shirt. Neither of those finding is surprising
Unfortunately, it is not possible for me to

Take possession of the shirt for additional testing without filing an application for a writ of habeas corpus on you behalf. If we file an application for a writ of habeas corpus we can then ask the Judge to allow us to conduct additional forensic testing on the shirt. This does not mean that the Judge would definitely allow us to do the testing. I believe the state would argue that the lack of gun powder residue on the shirt would not prove your innocence so there is no need to do the testing. The Judge is likely to agree with that argument. Nevertheless, if you want me to file an application for a writ of habeas corpus on your behalf I am happy to do that. In that application I can argue that you are actually innocent of the murder of which you were convicted and that we need to do additional forensic testing of the shirt in order to prove that. I can also include an argument that your guilty plea was not entered voluntarily, knowingly or intelligently. I am of the opinion that these arguments will not be successful

but that does not mean you should not try them. If you want to pursue these arguments I will do everything possible to make them work.

I suggest that you talk to you family about whether to go forward with a application for a writ of habeas corpus. If you decide that is what you want to do I will start drafting the application as soon as your family pays my fee to do that

Please do not hesitate to contact me if you have any questions.

Yours very truly,
Robert N. Udashen P.C.

RU:ps

cc: Mr and Mrs. Cecil Kegley

Mom:                                    11-9-14

                                        Sunday

   Here is a Letter to you and all the Stuff we have put together and a Copys of the Letters from Robert S.A. got a Letter in their too for you to read. When you'll read of this Stuff your understand. Now We got Stuff filed and put Some more together and push the point that they doat ~~know~~ what to here are uncover what they did to are family. It not Justice and I can not belive it Justice. It about getting payed money You now that and they now that. Now about Robert I fill he going to beat around the bush and put a price on what he's Looking at You have to be furm with any Lawyer doat Let them tell you how too do a Job. There going too play with your mine, ~~they~~ They go too School too play games and they now we don't no what too do. If you Look back at the ~~first~~ 1 Letter we got from Robert He told me to Let him ~~now~~ no any thing Well here is my Letter too him You tell him are how every to push

LOBBY

What we got on paper and get answer, there is no way to get around the hole matter at hand, and a problem with the case. They didnt what us to go to trial are even produce any thing in cout Court that the problem if we did and We had some one that was working for us and I had a back bone and stud up for my Self and I now what I know now I wouldnt be here at all. Mom I Love you Im Trying so hard Some thing got too come up why is there not a report that they had to Send a police offer too the hospital too get me and ques question me at the jail are give me a ride back at the house where is that at I have not seen it Well here is what we got I got one more but Im running out off Stamps I got too go too store I can only have So many and I need writ Env.

I Love you be Safe and Stay out of the wether it going too get Cool and Wet,

Loue Ronnic

Monday
11-8-14

There all that you need too go with there is Letters in there for you. There is a hand writing Letter for the courts too show all evedi that they have agains me That they didnt what too show in court if they had anything Well it all most 800 there be calling mail room and I need to get it close up So I'll call you too see what up I Love you

Love Ronnie

CAUSE NO. 12-10-11,741

RONNIE JOE HENDRICK
    petitioner

V.

THE STATE OF TEXAS

24TH JUDICIAL DISTRICT
    BRANCH
DEWITT COUNTY, TEXAS

BY THE TEXAS CODE OF CRIMENTAL PROCEDURE, ATRECLE 11.07 Sec. 3 ay. HABEAS CORPUS POSTCONVICTION REQUEST FOR THE DISTRICT ATTONERY SET A EVIDETARY HEARING TO SHOW EVIDENCE OF JUST CAUSE TO CONVICT PETIONER OF MURDER.

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes, Ronnie Hendrick, and in the above styled titled challeging the 24th Judicial District, DeWitt County to set and evidetary hearing. On petitioner's claim to show cause in and an Administrative proceeding the allegations from petitioner about the 24TH Judicial District, DeWitt County with held and to present all the evidence. Witness the following

Petitioner contends that if granted an evidetary hearing pursuant to the Article 11.07 Sec. 3 ay Habeas Corpus Postconviction the County of DeWitt. Being 24TH Judicial District County courtroom to answer the spoilation of records. Therefore it would be of District Attorney to not committ a ministerial act and set the procedural a hearing Administratively to answer to 1.) Why did the court not present the following documents from the 2001 proceeding.?

2.) If were arrested back in the 2001 accusation? Why, was petitioner released.

3.) If, so was there a field agent or officer that gave petitioner a field test.

4.) If, so and petitioner did past the field test, how is it that means a firing of a wypon yes or no?

5.) Why petitioner didn't have a detainer when came done for said probation violation in 2011 to 2012, with 10 years TDC.

6.) And othe questions etc.;

Therefore a hearing at which evidence is presented, as opposed to a hearing at which only legal argument is presented. Should be held to answer claim in Article 11.07 and othe questions. Petitioner pray to the court that they grant this motion in good faith

## PRAYER FOR RELIEF

WHEREFORE, PREMISES, Petitioner, prays that the 24th District court, Grant an evidetary hearing on Article 11.07 Habeus Corpus Claim.

pro se Petitioner

Copy

First Claim

REQUEST ORAL ARGUMENT
                TO CONTENTS OF THIS
                    MEMORANDUM
        WITH EXHIBITS
    1. "A" ORIGENAL AUTOPSY  January 8, 2001
    2. "B" ORIGENAL  TEXAS DEPARMENT OF PUBLIC
                        SAFETY TEXAS RANGERS DIVISION 1-8-20
    3. "C" ORIGENAL FORENSIC SCIENCE CENTER
                        INVESTIGATION REPORT 1-8-2001
    3. "D" ORIGENAL AUTOPSY REPORT AMENDMENT
                            JUNE 5, 2012



RONNIE HENDRICK

V.

THE STATE OF TEXAS

IN THE DISTRICT COURT

24th JUDICIAL DISTRICT

DEWITT COUNTY, TEXAS

## MEMORANDUM OF LAW

### TO THE HONORABLE SAID JUDGE OF THIS COURT

Comes now petitioner in the above styled cause to show proof in this memorandom reciting facts with case law. The ineffective ~~assi~~ assistance of counsel, a violatation of Due process Clause under Equal protection. The fact of treated to double jeopardy standards along with cruel unusal punishment by a malicous prosecution done in this Judicial court room being 24th District court. That all bar, merger, an collateral estoppel has been commited along with an ~~obstructa~~ obstruction of justice by tampering with evidence. Petitioner refers to Strickland, 466 U.S. at 686, 104 S.Ct. at 2064, the United States Supreme Court has explained the meaning of a fair trial.

"[A] fair trial is one in which evidence subjects to adverarial testing is presented to an important tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the

D.1

Sixth Amendment, since access to counsels skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which there entitled.... That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to assistance of counsel because it envisions counsels playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be asisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair". Id at 685.

Petitioner notes defense counsel failed to adequatley investigate the accusation of the murder through the original date back in 2001 to now when so called reopen 2012. It is well settled that trial counsel has duty to make an independant investigation into the facts of the case. Mcfarland v. State, 928 S.W.2d 487, 501 (Tex.Crim.App. 1996), cert, denied, 509 U.S. 1119, 117 S.CT. 966, 136 L.Ed. 2d 851 (1997) (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052)
Therefore if attorney would have investigated any of the proceeding he would done his job an not fallen under this. Double jeopardy provisions in the fifth Amendment of the constitution of the United States which provide that "No person... shall... be subject for the same

offense to be twice put in jeopardy of life or limb". This provision has been fundamental to the common Law and finds expression in state constitution". See 18 Wall. 163, 168. It has now been held applicable to the states through the due process clause of the Fourteenth Amendment. See 395 U.S. 784, 786. The Clause operates only in criminal settings and prevents a second prosecution, regardless of the outcome of the first trial (acquittal, conviction, or mistrial) unless there has been an appeal from conviction, See 163 U.S. 662, 668, or a mistrial granted upon manifest necessity. See 410 U.S. 458, 465; 400 U.S. 470, 485.

The bar against double jeopardy applies only after "Jeopardy has attached"....i.e., after the jury has been sworn or after a judge in a non-jury trial recieves the first piece of evidence at the trial. A dismissal prior to jeopardy attaching does not preclude a second or reviewed prosecution under the double jeopardy clause.

Double jeopardy bars double punishment as well as double prosecution. While higher penalty upon a retrial following a succesful appeal does not itself violate the double jeopardy guarntee, there must generally appear independent justification for the increased penalty in order to insure that the higher penalty is not vindictive. See 395 U.S. 711, 717, see also collataral estoppel. Mean back when the alleged occurred it was ruled a suicide, not a murder. All due to the public T.V. show Cold Justice and others who participated in the malicious prosecution that this happen.

Meaning collateral estoppel: the doctrine recognizing that determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings against each other, also known as issue preclusion. "In a subsequent action between the parties on a different claim, the judgment is conclusive as to the issues raised in the subsequent action, if these issues were actually litigated and determined in the prior action." Restatement (second) Judgment + 45. The constitutional prohibition against double jeopardy includes within the right of the defendant (but not the state) to plead collateral estoppel and thereby preclude proof of some essential element of the state's case found in the defendants favor at an earlier trial. 397 U.S. 436.

Therefore with that being the case at hand if attorney would have investigated the alleged accusation of murder. On bringing this back up again, but now titled a murder, but first was a self-inflicted wound ruled as suicide in 2001. By not filing the right motion to get what attorney need to show proof of petitioners innocence. Attorney left petitioner subjected to the malicious prosecution at hand, see the following cite and witness by nations law.

CONSTITUTION OF THE UNITED STATES
OF AMERICA
ARTICLE I. LEGISLATIVE DEPARTMENT
Amendment 5. Criminal actions- Provisions concerning

Due Process of law and just compensation clause:

No person shall be held to answer for a capital, or otherwise infamous crimes, unless on a punishment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; war shall be compelled in any criminal case to be a witness agianst himself, nor be deprived of life, liberty, or property, without due process of law.

Thus, if attorney would have investigated the original alleged accusation he would have all the proof to protect the petitioner from cruel and unusal punishment. Meaning when all this took place January 8, 2001 petitioner was aquit mean this. To set free or judicially discharge from an accusation of suspicion of guilt. see 65 N.Y.S. 1062, 1065. A individual is acquitted when at the close of trial, either a jury or court determines that the person has been absolved of the charges which the bases of the action, a verdict of "not guilty" aequits the defendant and prevents his or her retrial under the principles of double jeopardy.

This is were all the problems come in at cause for the simple fact at original investigating officer declared it closed open shut case. Petitioner has proof in the exibits in the memorandom of law presented.

Also petitioner argue the Breach (of contract) a party's failure to perform some contracted-for or agreed-upon act, or his failure to comply with a duty imposed by law which is owed to another or to society 682 F.2d 883, 885. Constructive breach: this occurs when the party bound to perform does some act that disables him from performing under the contract or announces in advance of his time for performing that he has no intentions to do so. This creates an anticipartory breach. 19. F.2d, 388, 389.

Meaning in the begining it was all said and done that petitioner did not do what courts alleged said commit murder. For the simple fact on original date the ruling of suicide was made petitioner was set free. But due to the publicity of T.V. show Cold Justice there was no way petitioner was going to get a fair trial. Attorney then back down and misinformed ~~appellant~~ petitioner direction of unfairness and violated his Sixth Amendment of the United State Constitution.

When due to contract a promise, or set of promises, for breach of which the law gives a remedy, or the performance of which the law is some way recognize as a duty. 1 Williston, Contrast t, r4thed. 2009). The essentials of vaild contract are "parties competent to contract, a proper subject-matter, consideration, mutuality of agreement, and mutuality of obligation", 286 N.W. 844, 846; "a transaction involving two or more individuals whereby each becomes obligated to

the other, with reciprocal rights to demand performances of what is promised by each respectively." 282 P.2d 1084, 1088. "The total legal obligation which results from the parties' agreement as afected by law".

Matter of speaking in general upon the agreement and the obligation with attorney and petitioner with this family members. When neither petitioner or family members have no contract for attorney say didn't need one. Petitioner would like to note with all these said in memorandum of laws petitioner would like to add out of the following:

# TEXAS DIGEST 2d
# OBSTRUCTING JUSTICE
13. EVIDENCE
14. PRESUMPTIONS AND BURDEN OF PROOF

Dillard v. State Tex.App., 640 S.W.2d 85

Defendant was convicted in the County Court, Cooke County, Jim A. Robertson, J. of tampering with physical evidence, and defendant appealed. The Court of Appeals, Richard L. Brown, J. held that: (1) defendant's incriminating grand jury testimony should not have been admitted into evidence, and (2) evidence was insufficient to support conviction!

Reversed; prosecution dismissed

1. Criminal Law -539 (h)

Where defendant was not apprised of his constitutional right agianst self-incrimination prior to his grand jury testimony,

defendant's incrimination ~~prior to his grand jury testimony~~ grand jury testimony should not have been admitted into evidence in prosecution for tampering with physical evidence. U.S.C.A. Const. Amends 5, 14.

2. Obstructing Justice -16

Evidence in prosecution for tampering with physical evidence, including testimony that defendant had told investigating deputy that he had seen stolen radio two weeks earlier in possession of another, and that defendant had discussed possibility of obtaining radio in future and feasibility of changing its frequency, failed to show that defendant concealed or secreted radio during investigation into its theft, and therefore, was insufficient to support conviction for tampering with physical evidence. V.T.C.A., Penal Code † 37.09

[1] Appellant contends that his incriminating grand jury testimony should not have been admitted into evidence because he was not properly warned of his rights to refuse to incriminating answer prior to his grand jury examination. We agree. The record reflects that at no time prior to his grand jury testimony was appellant apprised of his fifth Amendment rights against self-incrimination prior to his grand jury testimony, incriminating testimony obtained at such proceeding is inadmissible in a subsequent trial of that witness. Allen v. State, ~~797 S.W.2d 771~~, 80 rTex. Cr. R. 70, 188 S.W. 979 (1916) Simmons v. State, 79, Tex. cr. R. 341, 184 S.W. 226 (1916). We find that trial court erred in admitting appellants grand jury testimony into evidence. [2] We look now to determine whether the state adduced

sufficient evidence, other than the grand jury testimony, to support appellant's conviction. V.T.C.A., Penal Code, + 37.09 supra, provides in part: "(a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he, (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation..."

The State's evidence tend to show that appellant was aware that an investigation for the theft of the radio was in progress. However, the ~~can~~ State's evidence ~~entire~~ entirely failed to show that appellant concealed or secreted the radio during the investigation. The evidence reflects that appellant told the investigating deputy that had seen the radio two weeks earlier in the possession of another. There was also testimony that appellant discussed the possibility of obtaining a radio in the future and the feasibility of changing its frequency. The record is devoid of any testimony other that ~~found~~ from him that appellant had the subject radio ~~it~~ in his possession.

We conclude that evidence is insufficient to support appellant's conviction. Accordingly, we reverse and order the prosecution dismissed. Burks v. United States, 437 U.S. 1, S. Ct. 2141, 57 L. Ed. 2d 1 (1978); Gibbs v. State, 610 S.W. 2d 489 (Tex. Cr. App. 1980).

Petitioner contends that all of the next phrase is what the ineffective assistance of counsel has put him and his family through by the process to obtain ~~so~~ certain information about

the alleged accusation plus is still going on. Therefore petitioner will point out in all exibits facts to ~~the~~ point and understanding if attorney would have had investigated. (Following all need be witnessed)

Malicious Prosecution - an action for recovery of damages that have resulted to person, property or reputation from previous unsuccessful civil or criminal proceedings, which were prosecuted without probable cause and with malice. 52 N.W. 2d 86, 90. "Meaning in original report January 8, 2001 it was closed ruled off as suicide."

Amend to alter, to improve upon. Thus, one amends a bill by altering or changing an established law - the law is continued in changed form. One amends a pleading by making an addition to or a subtraction from an already existing pleading. "Meaning on June 5, 2012 that Investigator Carl Bowen, Dewitt County Sherriffs office, submitted photographs and other documentation for review. Same outlook, but Undetermined finding by different examiner the catch now look at as murder"

Conviction that legal act by judge or jury which declares the guilt of a party and upon which sentence or judgment is found. 205 N.E. 2d 391, 398. The confession of an accused in open court or a verdict which acertains and publishes the fact of guilt are both sufficient to constitute a conviction. "Meaning with the T.V. show cold justice being shown and the unconstitute application they present. There is no way petitioner is going to get a fair and partial trial."

Judgment on the merits judgment rendered through analysis and adjudication of the factual issues presented, rather than by the existence of a technical or procedural defect, that requires on party to prevail. A "judgment on the merits" is binding and issues so adjudged become subject to the force of res judicata and collateral estoppel. Judgments not rendered on the merits are frequently considered dismissed without prejudice so that the factual issues may eventually be decided upon.

The constitutional prohibition against double jeopardy includes within it the right of the defendant (but not the state) to plead collateral estoppel and there by preclude proof of essential element of the states case found in the defendant's favor at an earlier trial." Meaning if the attorne would investigate like he was suppose to but sided with the publicity scene of the air T.V. show Cold Justice and misguidin and representing petitioner there wouldn't have been judgment on the merits."

"A" EXIBIT ORIGINAL (word for word plus attached)

(Original)
AUTOPSY
BEXAR COUNTY MEDICAL EXAMINER'S OFFICE
7337 LOUISE PASTEUR
SAN ANTONIO, TEXAS 78229-4565
(210) 335-4000, Fax (210) 335-4002
Name: Shelly, Pamela    Age: 31  Race: W  Sex: F
CAUSE NO. 2001-0040    Date + Time of Autopsy: 08 JAN 2001
                                                    8:30 a.m.

P-10

VINCENT J.M. DIMAIO, M.D        RANDALL E. FROST, M.D.
chief Medical examiner        Medical examiner
ROBERT C. BUX, M.D.        SUZANNA E. DANA, M.D.
Deputy cheif medical examiner      medical examiner
RUTH E. KOHLMEIER, M.D.      JAN C. GARAVAGLIA M.D
Assistant medical examiner       medical examiner
           ELIZABETH A. ROUSE, M.D.
           Assistant Medical examiner

Dr. Frost is present for the autopsy.

CONCLUSION

It is our opinion that Pamela Shelly, a 31 year old Caucasian female, died as a result of a self-inflicted gunshot would to the head with massive damage to the skull and underlying brain.

MANNER OF DEATH: Suicide

"6" EXIBIT ORIGINAL (word for word plus attached) (original)

TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION

REPORT OF INVESTIGATION
THIS REPORT IS THE PROPERTY OF TEXAS RANGER
DIVISION. NEITHER IT NOR ITS CONTENTS MAY BE

DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED

1. QUESTIONABLE DEATH
2. DE WITT COUNTY TX. US.
3. PAMELA CURLEE SHELLY, W/F, 07/25/1969, 31 yoa
4. 01/07/2001 (sunday)

SYNOPSIS:

Writer was contacted by CLIFF FOULDS, Dewitt County Sheriff, for assistance with a questionable death investigation. On 01-06-2001, the deceased, Pamela Shelly, WF, DOB 07-25-1969, sustained a gunshot wound to the head. Due to questionable information at the time of the shooting and conflicting reports from medical authorities, writer was asked to attend the autopsy. Same was performed on 01-08-2001 by Dr. RUTH KOHLMEIER, who classified the manner of death as suicide. No further investigation will be conducted by this writer; therefore, the file is closed.

INVESTIGATORS:

1.1 Marric Garcia, Sergeant, Texas Rangers
    6502 S NEW Braunfels
    San Antonio, TX 78223
    (210) 532-2923
1.2 Cliff FOULDS, sheriff, De Witt County Sheriffs office
    208 E. Live Oak
    Cuero, TX 77954
    (361) 275-5784

P.13

CUSTODY OF EVIDENCE
1.1 Evidence 25 color photographs SHELLY'S gunshot wound
. Date/Time 1/8/01 1:04:00 P.m
Address
Location Bexar County Forensic Science Center
By: Marrie Garcia, Sergent, Texas Rangers, "D" Company
Recovery value: $0.00

Note:
Transfer TO:                              Transfer Date:
Sheriff Cliff Foulds                      01/09/2001


"C" EXIBIT ORIGINAL (word for word plus attached)
(original)
              BEXAR COUNTY
        FORENSIC SCIENCE CENTER
           INVESTIGATION REPORT
COUNTY: DEWITT CO                    DATE: 01-08-2001
                                     TIME: 1050 HRS

    OFFICER AT SCENE
NAME: CHIEF DEPUTY G. EDWARDS
BADGE: 1201
  OF: DEWITT

In this orginal report: tells the
Case Summary
Circumstances
Observations
ADDENDUM

Jamie L. A
Investigator

"D" EXIBT ORIGINAL (word for word plus attached)

(presint)

RANDALL E. FROST, M.D                    ELIZABETH A. PEALOCK
Chief medical examiner                   Medical examiner
D. KIMBERLEY MOLINA, M.D                  RAJESH L. KANNAM
Deputy chief medical examiner            Medical examiner
JENNIFER J. RULOW, M.D                    WILLIAM D. McCLAIN, M.
Medical examiner                         Assistant Medical examiner

AUTOPSY REPORT
Amendment I

On June 5, 2012, this officer was contacted by investigator
Carl Bowen, DeWitt County Sheriffs office, regarding this case.
According to Investigator Bowen, there is now suspicion that
gunshot wound received by the decedent was not self-inflicted
and may have been inflicted by another person. Investigator
Bowen submitted to this office photographs and other
documentation for review. After review of documents and
discussions with Investigator Bowen, the manner of death is

p.15

amended to "Undetermined", due to investigative uncertainties about how the wound was sustained. There remain no autopsic features of the wound that would preclude a self-inflicted wound, but a wound inflicted by another person also cannot be exclude.

MANNER OF DEATH: Undetermined.

RANDALL E. FROST, M.D.
Chief Medical examiner

D. KIMBERLEY MOLINA, M.D.
Deputy chief medical examiner

Petitioner notes that most of the documents given are from the reasons that the bar is investigating this hold situation at hand. Note all of the following it need to contact them.

STATE BAR OF TEXAS
Office of the chief Disciplinary counsel
San Antonio Region
Travis Park Plaza
711 Navarro, Suite 750
San Antonio, Texas 78205

RE: 2014022266 Ronnie Hendrick v Neftali J. VillaFranca

Robert Brown - Investigator

p-16

PROOFS + ERRORS:

Cause number 12-10-11, 741

PLEA OF GUILTY

"Petitioner notes word for word from this document pages 1-5"
Court: In your file are a Punishment Recommendation, a Plea Memorandum, a Judicial Confession, and a Certification and waiver of your right to appeal. Before you signed any of these documents, did Mr. Villafranca go over the documents with you and explain them to you?" "Petitioner notes word for word no the attorney misinform first and foremost about a change of venue. Then said your not going to get a fair trial anyway.

Court: The State may present its evidence

"Petitioner notes word for word from this document pages 8-12.
Mr. Kendall: Your Honor, the State had marked as States' Exhibit number 1, the Plea Memorandum, and state's Exhibit number 2, the Judicial Confession. The State would offer both State's Exhibit number 1 and number 2. at this time.

The Court: "Petitioner notes word for word from this document pages 17-25." The states' evidence is admitted. Does the Defense have any evidence to offer at this time?

Mr. Villafranca: No, Your Honor. I would like to ask my client just a few questions, with the permission of the court.

The court: SURE

Mr. Villafranca: Mr. Hendrick, now, I know that at the jail that my understanding was one term of years I had

Petitioner notes right there is a conflict of interest among's client and attorney first and futhermore. It would not have had an outcome of this nature if attorney would have investigate the case from the get go. Under the United States Constitution and Fortenth Amendment. Are violated along with petitioner sixth amendment rights to a fair and partial trial. Petitioner notes word for word as exhibit #1.

MICHAEL A. SHEPPARD
DISTRICT ATTORNEY
24th JUDICIAL DISTRICT
307 N. GONZALES, CUERO TEXAS 77954

To Whom It May Concern:

This letter is written regarding Mr. Tali Villafranca representation of Ronnie Joe Hendricks in a murder case in Dewitt County, Texas.

I am the District Attorney for the 24th Judicial District which includes its jurisdiction, Dewitt County.

We begin to pick a jury September of 2013 Mr. Villafranca was able to obtain a mistrial for his client. The trial court reset the case and Mr. Villafranca vigorously argued for a change of venue which the court was considering. A couple of day after the mistrial Mr. Villafranca negotiated a plea of 82 years in prison for his client which, in my opinion, is a light sentence for murder.

The case had originally been written off as a suicide but had been developed as a murder case due, in part, to admissions that Hendricks made to witness, one recorded jail telephone lines and to officers all long before Mr. Villafranca was his attorney.

Petitioners notes mistrial a trial terminated and declared viod prior to the return of a verdict. A mistrial most commonly arises due to a deadlock in a jury's deliberations (hung jury), but may also be due to some extraordinary circumstance, such as death or illness of a necessary juror or of an attorney. It may also be due to a fundamental error prejudicial to the defendant that cannot be cured by appropriate instructions to the jury, such as the inclusion of highly improper remarks in the prosecutor's summation. It does not result in a judgment for any party, but merely indicates a failure of trial. See 157 S.W. 2d 879, 881. Mistrial in a criminal prosecution may prevent retrial under the doctrine of double jeopardy. Will that alone is ineffective assistance of counsel pluse a ministerial act committed by attorney and T.V. show Cold Justice

Petitioner notes word for word from this document as Exhibit "8".

OPEN FILE AGREEMENT

HOBBY Printing Facility

12-10-11 741
State v. Ronnie Hendrick          County: Dewitt
Tali @ VillaFrance

On November 8, 2002 gave the gave report
+ autopsy to Lawyer 12/13/12
3 Binders + 8 DVDS + 5 CDs available.

Exhibit #19


Ms. Debra Kegley
735 Jackson Road
Westoff, Texas 77994


RE. Cause NO. 12-10-11,741; The State of Texas v. Ronnie Joe
     Hendrick


     Dear Mrs. Kegley:


     Enclosed please find a file marked copy of the State's
notice of intention to use other crimes, Acts or Wrongs regarding
the above refrenced matter. If you have any questions
please do not hesitate to give me a call.


     Attorney
     Tali Villafranca

HOBBY

Exibit #20

## STATE'S NOTICE OF INTENTION TO USE OTHER CRIMES, ACTS OR WRONGS.

1. Driving while intoxicated; DeWitt County, Texas; October 27, 1994.

2. Driving while intoxicated; DeWitt County, Texas; ~~July 9, 2005; victim Wanda Jean Lindquist~~ march 16, 2001

3. Assault - Family Violence; DeWitt County, Texas; July 9, 2005; victim: Wanda Jean Lindquist.

4. Assault - Family Violence; DeWitt County, Texas; July 13 2005; victim: Wanda Jean Lindquist.

5. Driving while intoxicated; Yankton County, South Dakota november 15, 2002

6. Family - Domestic violence, Assault; Yankton, South Dakota; April 23, 2006.

7. Assault - Family Violence Enhanced; DeWitt County; Texas April 20, 2008; victim: Lanette Brem Pitt's daughter.

8. Assault - Family Violence Enhanced; DeWitt County, Texas May 22, 2008; Victim: Lanette Brem Pitt.

Michael A. Sheppard
District Attorney
24th Judicial District
DeWitt County Courthouse
307 N. GONZALES
CUERO, TEXAS 77954

P20

Petitioners notes with this motion notice and recommendation how could you presume or even get a person to a profile of murder. Also in the ~~alleged~~ alleged indictment of murder of the first degree there's not a iffimitive finding of a deadly weapon. thus, its that part of the matter at hand. Petitioner notes word for word Exhibit #22 as follows.

COLD JUSTICE                    Wednesday
                                August 28, 2013
        NEWS PAPER NEWS - ~~DEEN~~ DEWITT

    In the paper note:

        Bowen continued to look at the case from time to time over the next several years.
        In 2012 the television show producers contacted the sheriff's office and asked if there were any cold cases here and that they could provide additional services to help bring the case to final.
        Bowen utilized the help and re-opened the case. He made five trips to Arkansas to interview family members. The evidence was submitted to a grand jury and Hendrick was indicted for murder on Oct. 3, 2012. He is now accused of shooting Pam Shelly in the head back in 2000.
        The television show is "Cold Justice". Its new season starts Tuesday, sept. 3 on TNT network.
        The case the reality show has chosen as its lead

deals with the death of women in Dewitt County in 2008.

Hendrick's Statement in custody Driving home from Austin, in May of 2008 the defendant made unsolicited statements in the back of the patrol vehicle. These statements were witnessed by officer Tanya Mares and she will testify to the same. Hendricks spontaneously uttered that he did not pull the trigger but she (Pam) did it in front of him and he saw her do it.

Petitioner notes ~~that a~~ by all these proceeding of ineffective assistance of ~~counsel~~ there's been an ministerial act those acts performed by a subordinate official according to explict directions, usually embodied in a statute rather than directed by judicial order; "the term "ministerial"... is generic rather than specific, and ministerial acts may be divided into two classes: (1) those that are ministerial solely and involve no judicial... A purely ministerial act... is one which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done". 139 N.W. 83, 88.

Petitioner also note the form of malice with respect to slander and libel, it is the mental state that accompanies the making of a false statement when the maker knows it to be false or when the make recklessly disregards the truth or falsity of it. See 362 F.2d 188, 195 In case of malicious prosecution, it embodies an intent to institute a prosecution,

it embodies an intent to institute a prosecution for a purpose other than "bringing an offender to justice". 164 So.2d 745, 750. It includes any prosecution "undertaken from improper wrongful motives or [in] reckless disregard of the rights of the plaintiff". 460 P.2d 557, 559.

Therefore Petitioner was subjected to a Obstruction of Justice as the "impeding or obstructing [of] those who seek justice in a court, or those who have duties or powers of administering justice therein", 204 S.W. 788. It was an offense at common Law. Id. at 789. It includes acts such as attempting to influence, intimidate or impede any juror, witness or officer in any court regarding the discharge of his duty, as well as the actual impeding or obstructing of the due administration of justice. See 16 A.2d 642, 644. When the statute addressing the subject reaches beyond interference with the judicial process and proscribes as well interference with police officers and other such administrative officials, it is sometimes called "obstruction of governmental administration" See generally Model Penal Code + 242.

Therefore the floormate of the hold "Cold Justice" issue and what they present to ~~what~~ people is done as a Embracery the common law misdemeanor of attempting to bribe or corruptly influence a juror. 4 Comm. 140. It has been held that embracery may also be committed by corruptly attempting to influence members of the grand jury as well as the petit [trial] jury. 118

123

Therefore petitioner so far has shown the 2 prongs of: Strickland v. Washington, 466 U.S. 665, 104 S.Ct. 2052 (1984) and Butler v. State, 716 S.W. 2d. 48 (Tex. Crim. App. 1986) cites you must allege and prove both of these points to win. "Might I, add, I have proof of what I'm presenting to show the ineffectiveness of my so called attorney". It's in Ex parte Parham, 611 S.W. 2d 103 (Tex. Crim. App. 1981). Once the defendant shows that conflict of interest actually affected the adequacy of representation, prejudice will be presumed.

Same as Ex parte Staats, 482 S.W. 2d 638 (Tex. Crim. App. 1972). Habeas Corpus relief was granted for ineffective assistance of counsel. The court appointed attorney was appointed moments before trial. The attorney advised the defendant to plea guilty but the defendant refused to "cop for no life". Consequently, at trial the attorney did not represent his client. He neither made objections to otherwise inadmissible evidence evidence nor advised the defendant of his right to appeal.

Same a Ex parte Lilly, 656 S.W. 2d 490 (Tex. Crim. App. 1983). Counsel was ineffective where he did not consult with defendant, did not review prosecution file, had not conducted an independant investigation had not interviewed the State's witness and, had not properly reviewed the enhancement allegation.

Petitioner notes original ruling by.

DEWITT County SHERIFFICE OFFICE

NO. 2001000003                                                      04/05/2001. 04/05/2001

~~Sex~~ SUICIDE                                                              Date created
Offense                            SUPPLEMENT 2                              Date last
                                    Report Title                              updated

Details offense, Progress of Investigation, ETC....

page no. 1
Introduction:

        I have recieved the report from the Bexar County Medical
Examiners office out of San Antonio Texas. The report stated
that the gunshot wound to Pamela Shelly was self-inflicted, and
was ruled a suicide. see medical examiner report for more
information
                    Deputy  Brandon Riedel #1203


        Keep in mind to the courts if the attorney would have
investigated like he suppose to he would have knowlegede of this. Plus
would have submitted everything from 2001 to evidence at
hand. thus, the teimmpering with evidence and obstructing
of Justice in the hotel ordeal had a part to play. Also with
the "Cold Justice" T.V. show and profiling has subject
petitioner and family to cruel and unusal punishment.
petitioner note a teimmpering of evidence doucument word

P.75

for word.

June 25, 2012                     Client Case # 200100003


DE WITT COUNTY SHERIFFS OFFICE
ATTN: SHERIFF JODE ZAVESKY
208 E. LIVE OAK
CUERO, TEXAS 77954


FORENSIC CASE REPORT

Offense: Murder
Case   Ronnie Hendrick - suspect
name   Pamela Shelly - victim


The major DNA profile obtained is attributable to unknown male #1.
"Petitioner notes with this alone attorney should have done what his job was suppose to do. Meaning represent him to the fullest. Therefore petitioner will cite this cite for the simple fact if it was even a statement you cannot wrongly convict a person.


CARRION V. STATE, 926 S.W. 2d 625 (Tex. App. - Eastland 199
(1) evidence was legally and factually sufficient to support his conviction for fabricating physical evidence with respect to count alleging that he gave false statement to police, and (2) evidence was not legally sufficient to support his conviction with respect to count alleging that he falsely told officer that club was used in assault.                    so ordered

p.26

1. Criminal Law - 1144.13 [2.1], 1159.2(7):
When reviewing sufficiency of the evidence claims, appellate court must review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found essential elements of crime beyond reasonable doubt.

2. Obstructing Justice - 5
Evidence was factually and legally sufficient to support defendant's conviction for fabricating physical evidence; defendant made false report to police officer and upon signing affidavit, defendant adopted its contents knowing that affidavit was to be used to affect outcome of investigation against alleged perpertrator.
V.T.C.A., Penal Code 37.09

3. Criminal Law - 1144.13 (6), 1159.2 (2)
When reviewing claim of factual sufficiency, appellate court must view all the evidence and set aside verdict only if it so contrary to overwhelming weight of the evidence as to be clearly wrong and unjust.

4. Obstructing Justice - 5
Evidence that defendant told police officer that club was used in assault was not legally sufficient to support defendant's conviction for fabricating physical evidence; it was defendant's statement to officer that was false, not the club, and oral statement was not physical evidence. V.T.C.A., Penal Code 37.09.

5. Indictment and Information - 31
Term "count" is used to charge an offense and in contrast, term

P. 27

"paragraph" is used to charge a method of committing the offense.

6. Criminal Law – 620(1), Indictment and Information – 128

state was authorized to join the two fabricating physical evidence offense as seperate counts within a single indictment and to prosecute both offense in a single trial unless defendant made timely motion severance.

7. Criminal Law – 620 177

Defendant's motion to compel state to elect which count and paragraph it intended the charge the jury on did not amount to a motion for severance of the offense.

8. Criminal Law – 1166.14

There must be actual showing of injury or a showing or facts from which injury can be inferred in order to require reversal under article providing that defendant must be personally present at trial. Vernon's Ann. Texas C.C.P. art. 33.03.

9. Criminal Law – 1176

Any error in excluding defendant from hearing on motion for new trial was harmless beyond reasonable doubt; defendant did not show that he was injured from his absence at the hearing or any facts from which injury could be informed. Vernon's Ann. Texas C.C.P. art. 33.03. [4] We now address appellants third point of error complaining of the legal sufficiency of the evidence to support a conviction under the second count of the indictment. In order to commit the offense of fabricating physical evidence as alleged in the second count of the indictment, the record would have to show that appellant

p.28

presented the club, a thing, with the knowledge of its falsity. The record indicates that appellant told officer Perkins that the club was used in the assault. It was appellant's statement to officer Perkins that was false, not the club. An oral statement is not physical evidence. Although the record supports a finding that appellant lied to both officer Perkins and officer Pope concerning the assault, a rational trier of fact could not have found the essential elements of fabricating physical evidence beyond a reasonable doubt.

Appellant's third point of error is sustained. Because we have sustained appellant's third point of error, we need not address Point of Error No. 5 challenging the factual sufficiency to support the verdict as to this count. Accordingly, we reverse appellant's conviction as to this count and order an acquittal as to this charge. Burke v. State, 610 S.W. 2d 489 (Tex. Cr. App. 1980.)

Petitioner note with this cite even if petitioner made any kind of statements in the alleged back seat of a police vehical. Be mindful they ~~already~~ had petitioner in custody then the ~~accuse~~ accuse meaning police officer didn't do no memorandum rights then cause for the simple fact there was no statement. Another point of ineffective assistance of counsel for not investigating period. You can not take away the four year in which in fact now the officer wants to testify. Behind the Obstruction of Justice and slander of the T.V. show "Cold Justice". Petitioner note the following as double jeopardy clause and cite this cite.

<u>CLEWIS. V. STATE</u>, 922 S.W.2d 126 (Tex.Cn.App: 1996)
; vacated and cause remanded to Court of Appeals.

1. Criminal Law - 1158 (1)
Court of Appeals are vested with the authority to review facts questions in criminal cases.

2. Criminal Law - 1144.13 (2.1, 5), 1159.2 (2)
Proper standard of review of factual sufficiency of elements of offence is that court of appeals views all evidence without the prism of 'in the light most favorable to the prosecution' and set aside verdict only, if it is so contrary to overwhelming weight of the evidence as to be clearly wrong and unjust.

3. Courts - 247 (2)
Constitution confers appellate jurisdiction on courts of appeal that includes power to review questions of fact in criminal cases, and when court of appeals jurisdiction to review fact question is properly invoked, court cannot ignore constitutional and statutory mandates. Vernon's Ann. Texas Const. Art. 5, ++ 5,6.

4. Appeal and Error - 1004 (1)
~~Court of civil appeals and courts of appeals have authority and~~ ~~Court of Criminal Appeals jurisdiction includes the power to examine~~ ~~factual sufficiency.~~ responsibility to review verdicts in civil cases to determine whether the evidence is factually sufficient. Vernon's Ann. Texas Const. Art. 5†6.

5. Criminal Law - 1159.2 (1)
Court of Criminal Appeals jurisdiction includes the power to examine factual sufficiency.

6. Criminal Law - 1144.13 (6), 1159.2 (2)
When the defendant has asserted affirmative defense or has burden of proof on an issue, reviewing court considers all the evidence

p.30

and determines whether judgment is so against great weight and preponderance of evidence as to be manifestly unjust.

7. Criminal Law —1159.2 (1,7)

Whether the evidence in criminal case satisfies Jackson test for reviewing factual sufficiency of elements of offense is a question of law, that is, if the evidence is insufficient under the Jackson reasonable doubt standard it is "legally insufficient" and a determination that the evidence is "legally insufficient" means case should never have been submitted to jury.

8. Criminal Law —1159.2 (1)

-- Issue of factual sufficiency in criminal case is a question of fact

9. Criminal Law — 1159.2 (9)

In conducting factual sufficiency review, appellate court review, appellate court reviews the factfinder's weighing of evidence and is authorized to disagree with factfinders determination, however, review must be appropriately deferential so as to avoid appellate court's substitution of its judgment for that of jury.

10. Criminal Law —1159.2 (7,9)

After Court of Appeals in criminal case has determined that evidence is legally sufficient under Jackson to support verdict, it may proceed further to review factual sufficiency if it is properly raised; Jackson standard does not incorporate factual sufficiency review of evidence as appellate court does not review fact finder's weighing of evidence.

11. Criminal Law —1159.2 (7)

If reviewing court in criminal case determines that evidence is legally insufficient under Jackson standard, it must render

p.37

judgment of acquittal.

12. Criminal Law - 1181.5(1), 1089

In conducting a factual sufficiency review in criminal case, appellate court cannot substitute its judgment for that of factfinder as that would violate defendant's right to trial by jury; accordingly, courts of appeals should vacate a conviction based on appeals should vacate a conviction based on factually insufficient evidence and remand the cause for new trial. U.S.C.A. Const. Amend. 6.

14. Double Jeopardy - 107.1

Neither Federal nor Texas constitutional prohibitions against double jeopardy preclude defendants from seeking acquittal though new trial. U.S.C.A. Const. Amend 5; Vernon's Ann. Texas Const. Art. 1, & 14.

15. Double Jeopardy - 109

Double Jeopardy Clause does not prohibit retrial if reversal is based on factual insufficiency of evidence; however, retrial is prohibited where reviewing court determines that evidence is legally insufficient under Jackson; as a pratical matter, state has only one opportunity to present evidence legally sufficient to convict defendant. U.S.C.A. Const. Amend. 5; vernons Ann. Texas Const. Art. 1, & 14.

16. Criminal Law - 1144.13(3), 1159.2(2.7)

In Criminal case factual insufficiency challenge, the standard of review, that court of appeals view all evidence without prism of in the light most favorable to the prosecution and sets aside verdict only if it is so contrary to overwhelming weight of evidence as to be clearly wrong and unjust, correctly

imports beyond-a-reasonable-doubt burden of proof and successfully adapts factual sufficiency standard burden of proof at criminal trial. [1,2] The court of appeals "views all the evidence" without the prism of "in the light most favorable to the prosecution" [and] set [s] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." This holding harmonizes the criminal and civil jurisprudence of this state with regard to appellate review of questions of factual sufficiency. Bishop v. State, 43 Tex. 390 (1875); see also Clewis 876 S.W. 2d at 445-46 (citing Tibbs v. Florida, 457 U.S. 31, 45 n. 22, 102 S.Ct. 2211, 2220 n. 22, 72 L.Ed. 2d 652 (1982); (Cooper v. Caterpillar Tractor Co., 754 S.W. 2d 646, 652 (Tex. 1988); Minor v. State, 653 S.W. 2d 349, 354 (Tex. App. – San Antonio 1983) (Cadena, C.J., concurring)).

## I. FACT JURISDICTION OF APPELLATE COURTS

[3] Republic of Texas v. Smith, Dallam, 407, 410-11 (Tex. 1841) ("we decide, then, that the defendant in a criminal prosecution [in] the district court has the right of appeal to this court from the judgment or sentence of the court below, and to have the facts as well as the law, at his own election, opened for re-examination"); cf. Cooper, 754 S.W. 2d at 648. This court recently acknowledged in Bigby v. State, 892 S.W. 2d 864, 874 (Tex. Crim. App. 1994) the "considerable jurisprudence by this court and our predecessors with criminal jurisdiction

which had continually recognized the authority, though infrequently exercised, of the State's highest criminal court to review a case upon the fact as well as the law." Id. In that case, we also noted that the Legislature has consistently recognized the ability of courts with criminal appellate jurisdiction to review the facts of a case and that Article 44.25 of the Texas Code of Criminal Procedure has remained nearly identical since 1857 with each subsequent code revision. Bigby, 892 S.W. 2d at 874-75 n.5 (quoting art. 44.25 of the 1979 Code, art. 848 of the 1950 Code, art. 905 of the 1892 Code, art. 870 of the 1879 Code, and art. 744 of the 1857 Code); at 875. ("[O]ur ability to factually review a criminal cause ... is inherent in our' appellate jurisdiction' and the lack of any corresponding constitutional restriction.")

## II STANDARD OF REVIEW

### A. Civil Factual Sufficiency Review

[4] The Texas Supreme Court has consistently interpreted Art. V + 6 of the Texas Constitution to mean that the courts of civil appeals, and later the courts of appeals, have the authority and ~~the responsibility to review the courts of appeals have~~ verdicts in civil cases to determine whether the evidence is factually sufficient. See Meraz v. State, 785 S.W. 2d 146, 149 (Tex. Crim. App. 1990); Cropper 754 S.W. 2d at 648; Pool v. Ford Motor Co., 91 Tex. 406, 44 S.W. 69 (1898). That court has stated that the scope of review under a factually sufficient point

requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so agianst the great weight and preponderance of the evidence as to be manifestly unjust.... In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660, 661 (1951); see Cropper, 754 S.W. 2d at 646; Pool, 715 S.W. 2d at 654.

## B. Criminal Factual Sufficiency Review

[5] Since the creation of the Texas Court of Criminal Appeals in 1891, appellate jurisdiction has included the power to examine factual sufficieny, and "every appellate court with criminal jurisdiction recognized, acknowledged and utilized that power... Clewis v. State, 922 S.W. 2d at 141 (citing cases that have recognized the authority of the State's highest criminal court to review a case upon no t facts as well as the law) [6] while this court has not determined the proper standard for a factual sufficiency review of the elements of the offense by court of appeal, it has set the standard for factual sufficiency review in cases where the defendant has asserted an affirmative defense or has the court considers all the evidence and determines whether the judgment is so agianst the great weight and preponderance of the evidence as to be manifestly unjust.

The court of appeals is therefore constitutionally given the authority to determine if a jury finding is against the great weight and preponderance of the evidence and if this is improper it is up to the people of the State of Texas to amend the constitution. Meraz, 785 S.W. 2d at 154; see Ex parte Schuessler, 846 S.W. 2d 850, 852 (Tex. Crim. App. 1993).

## 1. Context of Jackson

Acknowledging that "state appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protection that follows from [In re] Winship [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970)]," the United States Supreme Court in Jackson set the standard of reviewing the sufficiency of state convictions on federal writ of habeas corpus. Jackson, 443 U.S. at 322, 99 S.Ct. at 2791. This standard constitutes the minimum standard for sustaining conviction under the Due Process Clause of the Fourteenth Amendment. Jackson, 443 U.S. at 317-18, 99 S.Ct. at 2788. In no way doe Jackson itself reference state constitutional or statutory law regarding appellate review. Although Texas courts have adopted the Jackson standard as the legal sufficiency standard in direct appeals, we have never held that its application precluded any other type of review. Clewis, 876 S.W. 2d at 413-44 (McGarry, C. J., concurring); Stone, 823 S.W. 2d at 379. As we explicitly noted in Griffin v. State, 614 S.W. 2d 155, 159 n.5 (Tex. Crim. App. 1981), "[S]tates are free to set higher standards of review [than Jackson]." [7] That's, if the evidence is insufficient under the Jackson standard, it is "legally insufficient." A determination that the evidence is "legally

insufficient" means that the case should never have been submitted to the jury. Clewis, 876 S.W. 2d at 429 n.1 (citing Ex parte Schuessler, 846 S.W. 2d at 852 n.5). [8] In contrast, the issue of factual sufficiency is a question of fact. Ex parte Schuessler, 846 S.W. 2d at 852 n.5. A Jackson review, "viewing the evidence in the light most favorable to the prosecution," is not a factual sufficiency review; rather, it is an analytical tool used to determine whether there is a fact issue at all. Clewis, 876 S.W. 2d at 441 (McGarry, C.J., concurring) The Jackson standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts". Jackson, 433 U.S. at 319, 99 S.Ct at 2789 [11-12] As the concurring opinion in the court of appeals below noted, "To render a judgment of acquittal is to literally substitute the judgment of the reviewing court for that of the jury" Clewis, 876 S.W. 2d at 441 (McGarry, C.J., concurring). This is because, as stated earlier, if the evidence is insufficient under Jackson the case never should have been submitted to the jury. Supra part II.C. However, when conducting a factual sufficiency review, an appellate court cannot substitute its judgment for that of the fact finder since this would violate the defenda right to trial by jury. See Tibbs, 457 U.S. at 42, 102 S.Ct. at Clewis, 876 S.W. 2d at 441 (McGarry, C.J. concurring); see a Choate, 44 S.W. at 70. Accordingly, courts of appeals sho vacate conviction based on factually insufficient evidence an remand the cause for a new trial.

p.37

## D. Stone Standard.

Stone standard of review, articulated by the Third Court of Appeals. Stone, 823 S.W. 2d at 381. "views all the evidence without the prism of 'in the light most favorable to the overwhelming weight of the evidence as to be clearly wrong and unjust." Id. Although the court of appeals indicated that the stone standard "correctly" imparts the "beyond-a-reasonable-doubt burden of proof" it ~~found~~ the stone standard deficient for two reasons: (1) Stone violates a defendants' right to trial by jury, Texas Constitution art. I, §15, by denying the factfinder the deference required ~~by the Texas~~ Constitution; and (2) the Stone standard violates the ~~Federal and~~ Texas prohibition against double jeopardy, U.S. Const. Amend. V and Tex. Const. art. I, §14.

### 1. Factfinder deference and right to trial by Jury

The Code of Criminal Procedure contains two provisions establishing that the jury is the judge of the facts. Tex. Code. Crim. Proc. Ann. art. 36.13 & 38.04. Notably, Chapter 36, "Trial Before the Jury", and chapter 38, "Evidence in Criminal Actions," do not reference the appellate process, and no similar provision appears in the Rules of Appellate Procedure. The import of the provision in the Code is, in part, to distinguish the role of the jury from the role of the judge at trial. Further, the court of appeal interpretation of these statutory provision is overly broad and would essentially preclude any appellate review of the jury determination of the facts and the weight to be given the

evidence. _Clewis_, 876 S.W.2d at 442 (McGarry, C.J., concurring). The appropriate balance between the jury's role as the judge of the facts and the reviewing court's duty to review criminal convictions is struck by not allowing the appellate court to "find", or substitute its judgment for that to the jury; rather, when it determines that the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust, it must reverse the verdict and remand for new trial. [13]. "The same Constitution which guarantees a right of trial by jury empowers Courts of Civil Appeals finally to decide all fact questions". _Pool_, 715 S.W.2d at 634, quoting Robert W. Calvert, "_NO Evidence_" and "_Insufficient Evidence_" Points of Error, 38 TEX. L. REV. 361, 368 (1960). The historical safeguards of the "inviolate" right to trial by jury are found in the deferential standards of review applied and the prohibition against rendition of judgment upon a factual insufficiency point. Appellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result;... those courts "are not free to reweigh the evidence set aside a jury verdict merely because the judges feel that a different result is more reasonable". _Meraz_, 985 S.W.2d at 154. These safeguards include:

In order that this court may in the future determine if a correct standard of review of factual insufficiency grounds, should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient... as to be manifestly unjust;

why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

## 2. Double Jeopardy

[14,15] Neither the federal nor the Texas prohibition agianst double jeopardy, U.S. Const. amend. V.; Tex. Const. art. I, + 14, preclude defendants from seeking an acquittal through new trial. Tibb v. Florida, 457 U.S. at 45, 102 S.Ct. at 2220; Lofton v. State, 777 S.W. 2d 96, 97 (Tex. Crim. App. 1989). As the United States Supreme Court held, the Double Jeopardy Clause does not prohibit a retrial if the reversal is based on factual insufficiency of the evidence. Tibbs, 457 U.S. at 39, 102 S.Ct. at 2216-17 (cited in Meraz, 785 S.W. 2d at 156) However, retrial is prohibited where the reviewing court determines that the evidence is insufficient under Jackson. That is, as a practical matter, the State has only one opportunity to to present evidence legally sufficient to convict in defendant. Meraz, 785 S.W. 2d at 156 [16] In sum, we are not presuaded that the Stone standard denies the factfinder the deference required by the Texas Constitution, violates defendants' right to trial by jury, or violates the prohibition agianst double jeopardy. Instead, we hold that the Stone standard correctly imports beyond-a-reasonable-doubt burden of proof and succefully adapts the factual sufficiency standard to the burden of proof at a criminal trial. Until the 1891

p.40

constitutional amendments the court continued to reaffirm and exercise its power to review and reverse jury verdicts on factual issues. See cases collected in Coapper v. Caterpillar Tractor Co., 754 S.W. 2d 646, at 648-649 [Tex. 1988]. The court summarized the nature of its power and duty to do so in Missouri Pac. Ry. Co. v. Somers, 78 Tex. 439, 14 S.W. 779 [1890], v.z. Although this court has the power to review a case upon the facts, and to set aside a verdict which has evidence to support it, that power has been reluctantly exercised. But it is the right and duty of the court to set aside a verdict, when it is agians such a preponderance of the evidence, that it is clearly wrong.

    Petitioner cites out of Code of Criminal Procedure to show the following to witness: Article 19.02

(a) In this section:

    (1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

    (2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(b) A person commits an offense if he:

    (1) intentionally or knowingly causes the death of an individual

    (2) intends to cause serious bodily injury and commits an act

p.41

clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

(c) Except as provided by subsection (d), an offense under this section is a felony of the first degree.

(d) At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Petitioner notes with that being the elements by law to in order to convict, assume, or even accuse petitioner of the alleged murder. There was never no concrete or physical evidence to prove the ~~alleged~~ accusation that was brought up in 2012. Now be mindful in 2001 when incident first happen and ruled a suicide how do you get murder 12 years later. Petitioner notes the following cite in order to ~~indict~~ charge and convict of murder witness the following. _Wooley V. State_ 273 S.W. 3d 260 (Tex. Crim. App. 2008) "murder"

Holdings: On defendant's petition for discretionary review, the Court of Criminal Appeals, Henvey, J. held that:

(1) factual sufficiency of evidence to support conviction was

p. 242

measured by the elements of offense as defined by hypothetically correct

... in indictment

... support conviction for murder as ... by elements of offense as defined by hypothetically correct jury charge.

2. Constitutional Law - 4770, Criminal Law - 1134.60

Affirmance on direct appeal of conviction for murder as party, based on appellate-courts' determination that evidence supported theory that defendant.

3. Constitutional Law - 4770

Due process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury. U.S.C.A. Const. Amend. 14.

4. Criminal Law - 1134.60

Appellat courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.

II. Federal Due-Process Implications of affirming Appellants' Conviction Under Theory That Appellant Aided "Another" In Committing The Offense [2-3.] Malik also recognize the rule, relied upon by appellant in his second ground for review, that "due process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the

jury". See Malik, 953 S.W. at 238 n.3.; Dunn v. United States, 442 U.S. 100, 105-07, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends 'the most basic notions of due process"). [4]

# COURT OF CRIMINAL APPEALS OF TEXAS
## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

## INSTRUCTIONS

1.  You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2.  The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3.  You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4.  You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5.  Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6.  You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7.  Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8.  You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9.  When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

Rev. 01/14/14

2nd Claim "B" Involuntary plea

Request Oral Argument
To contents of this
memorandum
with Exibits
1. "A" Original Autopsy    January 8, 2001
2. "B" Original Texas Department of Public Saftey Texas
                Rangers Division  January 8, 2001
3. "C" Original Forensic Science Center Investigation Report
                                January 8, 2001
4. "D" Original Autopsy Report Amendment
                                June 5, 2012
5. "E" Original State Bar Of Texas
                                June 29, 2014

## MEMORANDUM OF LAW

Now comes petitioner in this writ application and would show the court the cause of which petitioners constitutional rights were violated. In the involuntary plea forced upon petitioner by the courts of DeWitt, County violated petitioner's Sixth Amendment, Fourteenth Amendment to the United States ~~Constitution~~ Constitution, and Texas Constitution. When by the Court all proceedings are bound by Federal standards and Constitutional rights. Thus, must be spread out on the record. Several Federal constitutional rights are invoked in a waiver that take place when a plea of guilty is entered in a state criminal trial: (1) the privileg against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the state by reason of the Fourteenth; (2) the right to trial by jury; and (3) the right to confronn one's accusers. With the fraudulent concealment of the records violated petitioners rights of Due process of law. Therefore, Meaning are past holdings of this court to the effect that a federal habeas corpus petitioner who makes sufficiently credible allegations that his state guilty plea was involuntary is entitled to a hearing as to the truth of those allegations. See Walsey v. Johnston, 316 U.S. 101 (1942)

With that being the issue at had after reviewing all facts in this memorandon of Law Article 11.07 habeas corpus petitioner is entitled to have a hearing under Article 11.07 habeas corpus post-conviction.

Witness the following to show cause:

The act of fraudulent concealment; spoilation (of records)" "the hiding or destruction of litigation evidence" 166 N.J. 391. Remedies include the "spoilation inference" which tells the fact-finder that an adverse inference may be drawn that the evidence concealed would have been harmful to the case of the person who concealed it; discovery sanctions; or a separate tort action. Some jurisdictions feel the tort of fraudulent concealment is sufficient to deal with issues of spoilation. Fraudulent concealment has the following elements (1) the defendant had a legal obligation to disclose evidence in connection with existing or pending litigation; (2) the evidence was material to the litigation; (3) the plaintiff could not have reasonably obtained access by other means; (4) the defendant intentionally withheld, altered or destroyed the evidence with the purpose of disrupting the litigation; (5) the plaintiff was damaged in the underlying litigation by "having to rely on an evidential record that did not contain the evidence defendant concealed".

SUMMARY: Petitioner contends the purpose of this Article 11.07 post-conviction is to correct a wrong doing by the court which they imposed on petitioner involuntary. Fact you can't get over the fact that in 2001 when the alleged was pronounced a suicide from the very start. Why would the courts, judge, District Attorney's and Lawyer's with hold evidence in that cause. Thus, to state that it has been distroyed means tampering with evidence. Meaning the new allegation of Murder in 2012 from what happen in 2001 mean Dewitt County commited a fraudulent concealment; spoilation (of records)". And to deprive the petitioner of his constitutional rights to a fair trial with due process clause of equal protection. witness

SIXTH AMENDMENT the amendment to the U.S. Constitution that entitles the accused in a criminal trial the right to a speedy trial by an impartial jury, to be informed of the charges against him or her, to be confronted with witnesses against him her, to have compulsory process for obtaining witnesses in his or her favor, and to have effective assistance of counsel. While these rights from the foundation of the accused's right to a fair trial, the accused has been accorded additional rights such as the right to conduct his or her own defense as necessary to a fair trial under the due process clause. 422 U.S. 806, 821, Schwartz, Constitutional Law § 7.11 (2d ed. 1979).

FOURTH AMENDMENT constitutional amendment guaranteeing the right of persons to be secure in their homes and property from unreason-able searches and seizures and consisting of the following elements: (1) the issuance of a warrant upon oath or affirmation; (2) upon probable cause, as determined by a neutral and detached magistrate; and (3) particularly describing the place to be searched and the items or persons to be seized.

FOURTEENTH AMENDMENT one of the so-called Civil War Amendments to the Constitution ratified in 1868 shortly after the Civil War ended which guarantees that all persons born in any state of the United States are citizens of that state and of the United States and are guaranteed the privileges and immunities due to citizens of the United States and to due process and equal protection of the law.

EQUAL PROTECTION OF THE LAWS constitutional guarantee embodied in the Fourteenth Amendment to the U.S. Constitution which states in relevant part that "No State shall... deny to any person within its jurisdiction the equal protection of the law". This has not been interpreted to imply that all persons in the state must be equally affected by each statute that the legislature enacts. "The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary". 220 U.S. 61, 78. Thus, in the general case, courts presume the validity of a State statute "if there is any rational basis for it. See rational basis test. However, in certain special instances, the court will subject the law to "strict scrutiny". This test requires that the law be held to violate the equal protection clause unless the state can show a compelling intrest which can only be furthered by enactment of the statute in question. 394 U.S. 618, 634. The equal protection clause applies only to states; however, any denial of equal protection by the federal government is treated as a violation of due process clause of the fifth Amendment. 347 U.S. 497 499 55 N.C.L. Rev. 540 (1977).

FIFTH AMENDMENT the amendment to the U.S. Constitution, part of the bill of Rights, that establishes certain protections for citizens from actions of the government by providing [1] that a person shall not be required to answer for a capital or other infamous crime unless an indictment or presentment is first issued by a grand jury, [2] that no person will be placed in double jeopardy, [3] that no person may be

required to testify against himself, (4) that: neither life, liberty nor property may be taken without due process of law, and (5) that private property may not be taken for public use, without payment of just compensation.

SUMMARY: With that being all this, so far as rights violated by the courts toward the Petitioner. Make note of the EMBRACERY done by a television show namely Cold Justice.

Which is the common law misdemeanor of attempting to bribe or corruptly influence a juror. 4 Comm. * 140. It is immaterial that the influence might be in the direction of a just or proper verdict since the crime is the impermissible interference with the jury function. The crime is complete when the attempt is made; hence, "there is no such crime as an attempt to commit embracery". 130 S.E. 249, 251. It has been held that embracery may also be committed by corruptly attempting to influence members of the grand jury as well as the petit [trial] jury. 115 S.E. 2d 576, 579. Modern statutes have also treated the remaining aspects of embracery under the general offense of obstructing justice and the offense of embracery itself is tending to disappear as a distinct offense.

SUMMARY: Meaning by airing that as an T.V. series of events to the World then trying to hold a trial by jury. The court record reflects that more than 50 jury members selected made statements as to the guilt because of the T.V. show. As in the beginning to compensate any if a verdict of guilt is committed, so how can one possibly get a fair trial. Witness the following.

AS

COLLATERAL ESTOPPEL the doctrine recognizing that the determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceeding against each other; also known as issue preclusion. "In a subsequent action between the parties on a different claim, the judgment is conclusive as to the issues raised in the subsequent action, if these issues were actually litigated and determined in the prior action." Restatement (second) Judgments + 45. The constitutional prohibition against double jeopardy includes within it the right of the defendant (but not the state) to plead collateral estoppel and thereby preclude proof of some essential element of the state's case found in the defendant's favor at an earlier trial. 397 U.S. 436. ~~...~~

~~...~~

ESTOPPEL a bar; preclusion, also known as issue preclusion, "a bar which precludes a person from denying the truth of fact which has, in contemplation of law, become settled by the facts and proceedings of judicial or legislative officers, or legislative officers, or by the act of the party himself, either by conventional writing, or by representations, expressed or implied. An estoppel arises where man has done some act which the policy of the law will not permit him to gainsay or deny."

SUMMARY: therefore a hearing a proceeding wherein evidence is taken for the purpose of determining an issue of fact and reaching a decision on the basis of that evidence, 426 P.2d 942, 951; describes "whatever takes place before magistrates clothed with judicial functions and sitting without jury at any stage of the proceeding

subsequent to its inception." 15 N.E. 2d 1014; 1015. Meaning with all this so for a hearing should be set of the wrongful doing by the courts and exploration done by a television show "Cold Justice" to make petitioner committ to an involuntary plea. Witness the following cite.

By Federal Standard a Must Boykin v. Alabama
Supreme Court of the United States 395 U.S. 238; 89 S.Ct. 1709; 23 L. Ed. 2d 274; 1969 U.S. LEXIS 1434 courts reversed defendant's conviction
"Explain in a unconstitutional standard"

1.) States a plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. Admissable of a confession must be based on a reliable determination on the voluntariness issue which satifies the constitutional rights of the defendant. The requirements that the prosecution spread on the record the prerequistes of a valid waiver is no constitutional innovation. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. The same standard must be applied to determining whether a guilty plea is voluntarily made. Ignorance, incomprehension, coercion, terror, inducements; subtle or blatnt threats might be perfect cover up of unconsititutionality.

SUMMARY: Petitioner contends that state had appointed an state representative to represent petitioner, but due to the not understanding why he would not even come see him; or anything. Petitioner filed a

motion for dismissal of counsel on that part and it was granted.

The question of an effective waiver of a federal constitutional right in a proceeding is governed by federal standards. Several federal constitutional rights are ~~important~~ involved in a waiver that takes place when a plea of guilty is entered in a state-criminal trial. First is the privilege against compulsory self-incrimination guaranteed by U.S. Const. amend. V and applicable to the states by reason of U.S. Const. amed. XIV. Second is the right to trial by jury. Third is the right to confront one accusers. A court cannot presume a waiver of these three important federal rights from a silent record.

SUMMARY: Petitioner contends that it was impossible that the proceeding would be by federal standard. With the silent record disclosing the fact that the judge had declared a mistrial.

A defendant who enters a guilty plea simultaneously waives several constitutional rights including his privilege against compulsory self-crimina-tion, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtain in violation of due process and he therefor void. Moreover, because a guilty plea is an admission of all the element of a formal criminal change, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

SUMMARY: Petitioner contends if the proceeding was done under federal Standard and note by was of unconstitutional misguiding petitioner. In such a way were its by Law for the people right to due process and equal protection of the United States Constitution governs the proceeding in a court of law. Therefore there is no possible way that the courts withhild all what was done in 2001, for the simple fact that a T.V. was leadt to believe. Meaning that this was the embracey petitioner. contends that was unconstitutional from the get-go. How is it that it was possible when it's two different allegation to be proven. When for fact there are government officials still on the force in DeWitt County that know the truth. You can't get around the fact about the checking of the weapon. GSR checking that set petitioner free that night. Which under 2012 that the court with held from the silence record itself is a violation of petitioner Fourteenth Amendment, and Sixth Amendment.

## Standard and to determine voluntariness

Since a plea of guilty is more than an admission of condod and is a conviction, and since ignorance, incomprehision, coercain, terro, inducements, and stable or blatant threats, might be a perfect cover up of unconstitutionality, the standard to be applied in determining whether a guilty plea is voluntarily made is the same standard applied in determining whether an accused has made a valid waiver of the right to counsel, by which standard a presuming of waiver from a silent record is impermissible and the record must show, or there must be an allegation and evidence which show, or there must be an allegation and evidence which show, that the ~~accused~~ was offered counsel, but

intelligently and understandingly rejected the offer.

The question of an effective waiver of a federal constitutional right in a State criminal proceeding is governed by federal standards.

SUMMARY: If it was governed by federal standards meaning the proceeding which were not. It would be no possible way that an District Attorney could dictate the proceeding. Meaning, if the Judge pronounced that petitioner was not going to get a fair trial, an judge would possibly declare a mistrial. Why is it that a District Attorney would want to postpone the proceeding; and attorney did not submit the motion for dismissal for it was on the silent record. Or being that they took part in the embracery by the T.V. show Cold Justice.

Must be spread out on the record.

Several federal constitutional rights are involved in a waiver that take place when a plea of guilty is entered in a state criminal trial: (1) the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the State by reason of the Fourteenth; (2) the right to trial by jury; and (3) the right to confront one's accusers.

SUMMERY: Therefore, the Amendments of the United States constitution that are imposed by; federal standard upon a criminal proceeding in the courtroom that are suppose to be imposed by Law. Are automaticly violated by the District

attorney, and the so called attorney named Mr. Neftali J. Villafranca and the Judge of Dewitt County. Are in violation of petitioners Fifth Amendment, Fourteenth Amendment with Sixth Amendment's right to trial and confront accusers. For the simple fact withholding important evidence from the proceeding commiting a collater estoppel that would go in favor of the petitioner freedom then alone is another violation of the United States Constition.

For purposes of determining the voluntary character of the defendants guilty plea in a state court whether the process by which the trial judge accepted such plea violated the defendants right under the <u>Federal Constitution</u>, the United States Supreme Court cannot presume from a silent record a waiver of the three important federal constitional rights (1) the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the states by reason of the Fourteenth; (2) the right to trial by jury; and (3) the right to confront one's accusers which are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.

SUMMARY: There's no way seen in the record of ~~proted~~ proceeding that could possibly indicate that petitioner was going to ~~re~~ recieve a fair and partial trial. With the court proceeding a fundulent practice of spoilation with the records. Meaning withholding all the important facts that would set the petitioner free.

A defendant who enters a guilty plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to confront his accusers, for such a waiver to be valid under Due Process clause, it must be an intentional relinquishment or abandonment of a known right or privilege.

SUMMARY: How could the entry of petitioner's involuntary guilty plea be that of the ommission of guilt. When after broadcasting the T.V. show Cold Justice on the air and then try to go to trial there's no way possible it was going to be a fair and partial trial. Therefore, the courts and all who participated in the embracery of the Cold Justice T.V. series. Are in fault of petitioner's constitutional rights under Sixth Amendment and Fourteenth Amendment.

## SYLLABUS

1. This court has jurisdiction to review the question of the voluntary character of the plea since the plain error of the trial judge's acceptance of petitioner's guilty plea absent an affirmative showing that the plea was intelligent and voluntary was before the state court under the Alabama automatic appeal statute.

2. A waiver of the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the states by the Fourteenth; of the right to trial by jury; and the right to confront ones accusers -- of all which are involved when a guilty plea is entered in state criminal trial --- cannot be presumed from a silent record.

3. Acceptance of the petitioner's guilty plea under the circumstances of the case constituted reversible error because the record does not disclose that the petitioner voluntarily and understandingly entered his plea

of guilty.

The requirement that the prosecution spread on the record the prerequis-ites of a valid waiver is no constitutional innovation. In *Carnley v. Cochran*, 396 U.S. 506, 516, we ~~did~~ dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accussed was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

SUMMARY: Petitioner contends by the judge declaring a mistrial during the proceeding that by the embracery and fondulent act of spoilation by the courts. Is the main reasons of petitioner's involuntary plea under Ignorance, incomprehension, terror, subtle or blatant threats might be a perfect cover-up of unconstitutionality. Meaning that threats of petitioner will never see his family; the T.V. show airing on television; my lawyer telling me life in prison.

We think that the same standard must be applied to determining whether a guilty plea is voluntarily made for, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. *Douglas v. Alabama*, 380 U.S. 415, 422;

P.13

SUMMARY: Petitioner contends what possible waiver could be done when the silent record reveals that judge was going to pronounce a mistrial. Thus, there was no ~~evidence~~ evidence produce period, and what the silent record would reveal is everything from 2001.

"A plea of guilty is more than voluntary confession made in open court. It also serves a stipulation that no proof by the prosecution need be advanced.... It supplies both evidence and verdent ending controversy." Woodard v. State, 42 Ala. App. 552, 558, 171 So. 2d 462, 469.

SUMMARY: Therefore, the involuntary ommission of the plea stand for the prosecutor advantage forcing petitioner into itself. For the simple fact that the embracery would not go through unless a conviction was to commence on the part of the courts. When the record will reflect that all of the documents were in fact kept ~~silent~~ silent by the state it therefore make it involuntary plea forced upon petitioner. For the simple fact the prosecutor is not trying to go to trial the fundulant practice is enforced

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the State by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1. Second, is the right to trial by Jury. Duncan v. Louisiana, 391 U.S. 145. Third, is the right to confront ones accusers. Pointer v. Texas, 380 U.S. 400. We can not presume a waiver of these three important federal

p. 14

rights from silent record.

SUMMARY: Petitioner contends thats why a hearing should be set or the conviction be acquitted or remanded back to court for the courts to explain the acts of unconstitutional standards that were done in an unlawful way of an embracery behind a T.V. show

State verson 26:13 applies to quilty plea on federal grounds
In the federal regime we have Rule 11. of the federal Rules of Criminal Procedure which governs the duty of the trial judge before accepting a guilty plea. see McCarthy v. United States, 394 U.S. 459. We said that case:

"A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusors. For this waiver to be vaild under Due Process Clause, it must be 'an intentional relinguishment or abandonment of a known right or privilege. Johson v. Zerbst, 304 U.S. 484, 464 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowning, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a criminal chavge, it cannot be truly voluntary unless the defendant possesses and understanding of the law in relation to the facts"
What is at stake for an accused facing death or imprisonment demands the utmost solictude of which courts are capable in canvassiny the matter with the accused to make sure he has a full understanding of what the plea connotes and of its

consequences. When the judge discharges that function, he leaves a record adequate for any review that may be later sought [ Garner v Louisiana, 368 U.S. 157, 173; Specht v Patkison, 386 U.S. 605, 6704, and forestails the spin-off of collateral proceedings that seek probe murky memories

SUMMARY: Therefore, by this fedelaunt practice speculation of with holding the records by the prosecution, and attorney to go along with the embracery of the T.V. show series Cold Justice. By it airing on television the just the next day after picking a jury for a trial that didn't care nothing about the fact of petitioners' innocents period. 1), the fact the same county of accusation in 2001 ruled it a suicide 2), on the record it's noted that Cold Justice personel contucted the sheriff of Dewitt county about Cold case's 3) Minepulated petitioner family into signing papers, 4) while petitioner was already down for MTR probation in the T.D.C. all of the sudden new evidence, 5) that shows nothing that pertain to murder 6) the judge declaring a mistrial and not no one even the prosecutor, or attorney by federal standards advise petitioner of anythin 7) except by it bing on T.V. your not going to get a fair and partial trial that more than ground itself for the relief petitioner seeks.

Meaning there are past holdings of this court to the effect that a federal Habeas corpus petitioner who makes sufficiently credible allegations that his state guilty plea was involu -ntary is entitled to a hearing as to the truth of those

allegations. see Walsly v. Johnston, 306 U.S. 101 (1942)

PREJUDICE: A fixed anticipatory judgment as contradistinguished from those opinions that may yield to evidence. 82 S.E. 777, 780. For a criminal defendant to obtain a servance from other co-defendants under Fed. R. Crim. P. 14, the prejudice required to be shown is that the movant will be unable to secure a fair trial unless servance is granted. 573 F.2d 455, 480. In the context of laches, prejudice means a disadvantage in asserting and establishing a claimed right or defense, or other damage caused by a detrimental reliance on plaintiff's conduct, 632 F.2d 1279, 1280, barring plaintiff from prevailing. Under rules of evidence, evidence that is probative may still be excluded if it will cause unfair prejudice to the opposing party. See Fed. R. Evd. 403. As a ground for disqualification of a judge, prejudice is a "condition which sways the judgment and renders the judge unable to exercise his functions impartially in a particular case. It refers to the mental attitude or disposition of the judge toward a party to the litigation and not to any views he may entertain regarding the subject matter involved."

SUMMARY: Petitioner contends to show how he was prejudice during the hold proceeding in and out the court room. Witness the following.

Harrison P. Cronic, 839 F.2d; 1988 U.S. App. LEXIS 2111
Outcome: The court remanded the trial court with directions to order a new trial because the evidence showed that the defendant did not recieve assistance of counsel.

HOBBY

<u>CRIMINAL LAW & PROCEDURE > CRIMINAL OFFENSES ></u>
<u>FRAUD > MAIL FRAUD > GENERAL OVERVIEW</u>

Covering good faith in mail and wire fraud cases where the evidence
support it.

<u>CRIMINAL LAW & PROCEDURE > COUNSEL > EFFECTIVE</u>
<u>ASSISTANCE > TRIALS</u>

An attorney's trial decisions must be based on a proper exercise of
judgment based on an adequate knowledge of the facts and be on correct
legal grounds.

OPINION [839 F.2d 1402] SETH, Circuit Judge.
This appeal comes to us after we remanded the case to the trial
court. This was after the Supreme Court, at 466 U.S. 648, 104 S.Ct. 2039,
80 L.Ed. 2d 657, F.2d 1126, and remanded the case. It was decided by
the Court with the reversal in Strickland v. Washington, 466 U.S. 668, 80
L.Ed. 2d 674, 104 S.Ct. 2052 (1984). The case went to the Supreme Court only
the adequacy of representation issue. We have examined the record of
the hearing on our remand of this case to the trial court.

The trial court, after our remand but before the remand hearing, dem-
-onstrated a degree of hostility toward the defendant which prevented an
impartial conclusion based on the remand hearing.

The trial court after our remand made several statements on ~~the~~ the
record before the basic remand hearing which evidenced its hostility toward
the defendant. For example, at a hearing relating to the reinstatement
of defendant's bond held by the trial court, as directed by this court, the
trial judge said in reasons to defendants' "Thank you"

"Well you're not welcome. I think you're a swindler and a cheat and
you wouldn't see the light of day if I had any choice." Other statements

p.18

which show this attitude of the trial judge appear in the record. It is difficult to see how an appearance of impartiality was maintained in these circumstance.

The time element herein considered may be an aspect of the trial judge's hostility or may be a seperat element. In any event this court had remaded the case about two months before the date fixed by the trial court for the hearing on remand. The trial court appointed the then new Federal Public Defender to represent defendant at the remand hearing and gave him nine days to prepare. The attorney moved for additional time, the Government did not object, but the motion was denied. This was similar to the time given defendant's attorney to prepare for the initial trial. The court gave the attorney eleven days but when the attorney protested the court gave him 25 days. The attorney for a co-defendant, who pled guilty, stated that the Government's "documentation" was "a foot and a half if not two feet high". The Government had the case for about five years and two accountants had worked on it.

The hearing record on remand demonstrates that there was an obvious need to have an examination of the bank records on two basic issues, the exact amount of the overdrafts shown in the bank records, and the handling by the bank of a note and security put up by defendant never the outset of the dispute to secure payment of overdrafts if they existed to constitute actual payment thereof.

This payment of security was a note with a mortgage bottling plant. The bank took over the operation of the plant before payments on the note became due, and operated it for about two year. The mortgage was eventually forclosed.

HOBBY

[839 F. 2d 1903.] The intent of the defendant and his good faith as to the overdrafts was a basic issue in the prosecution, but at trial it was completely ignored by defendant's counsel to the prejudice of defendant. The testimony of the Government witness described a meeting between at least one bank official and the defendant at a time when it was not known whether the balances between the Florida bank and Norman bank demonstrated an overdraft in the account of sky proof (defendant's corporation) in the Norman bank. The defendant had come voluntarily from Florida to Dallas to have the meeting with the bank official who was there on a trip to discuss the possible overdrafts. At his meeting the defendant stated that any overdraft would be covered and that there were funds and adequate property to be so applied. The record shows that defendant later delivered a note and mortgage to the bank to cover overdrafts which had then been established only in approximate figures and which were substantial. Fund were also transferred to the Norman bank. A note and a mortgage on a batting plant in Pairs, Texas so delivered to the bank to cover the overdrafts as the defendant had offered to do. From the record it appears that this was accepted for the overdrafts. In any event, as mentioned, the bank shortly thereafter, and before payments on the note became due, took possession of the plant and began operating it. It operated the plant for about two years apparently with no accounting to anyone.

The trial court at the outset of the trial had explained to the jury pool that the nature of the case is a "check kiting scheme" which was the depositing of a check, "a fraudulent check.... which really there is no money there"... The case was tried throughout by the court and attorneys for both sides on the erroneous assumption that a check written on an account when there are insufficient funds to cover it

is in itself a fraud under the federal mail fraud statute.

We have long held that good faith is a complete defense to a mail fraud charges as have other circuits. United States v. Washita Construction Co. 789 F.2d 809 (10th Cir.). In Westbro, we stated:

"Thus, a defendant is entitled to an instruction covering good faith in mail and wire fraud cases where the evidence supports it. Sparrow v United States, 402 F.2d 826, 828 (10th Cir. 1968)", 576 F.2d at 288-89. The Supreme Court in a case charging the making of a false statement or report to a bank (18 U.S.C. ∤ 1014) of course considered the particular statutes in the context of what appeared to the court to be check kiting, but held as to the checks for insufficient funds that: "Each check did not, in terms, make any representation as to the state of petitioner's bank balance." Williams v. United States, 456 U.S. 279, 289-85, 73 L. Ed. 2d 767, 102 S.Ct. 3088.

A reasonable application of the prevailing standard of performance for an attorney under Strickland, in view of the long and well-established law and knowledge of the facts recited above, mandated the testimony of the Government witness. This matter was in no way explained at the hearing on remand, and was a basic failure under Strickland by defendants attorney at trial. It was also in an indication of a failure by the trial court to monitor the actions of the completely inexperienced trial attorney appointed by the Court.

The defendant's trial attorney at the hearing on remand sought to explain that the defense he used was one seeking to "cloud the issues." This cannot be a satisfactory explanation under Strickland or any other authority for a selection of a "defense". The defense chosen also had elements of denial of defendants responsibility for the writing

of the corporate checks as his name did not appear on them. However, the defendant had advised the bank officers before trial that he was in charge of the corporation, that the absence of his signature made no difference, and [839 F.2d 1404] that he would see that the overdrafts would be covered.

An attorney's trial decision must be based on a proper exercise of judgment based on an adequate knowledge of the facts and be on correct legal grounds. The bank officials at trial had testified that nothing had been paid on the overdraft. This was repeated several time and not challenged by defendant's attorney. This was not correct as the facts before the court at trial showed the acceptance of the bottling plant for the overdraft and the apparent recovery of forclosure of some, if not all, of the overdraft. The failure to investigate this use of the security was an obvious departure by defendant's attorney from acceptable standards and the predjudize resulting was apparent. It should also be observed as a comment on the bank records that the bank officials at trial testified several times, without a challenge, that the bank had cost $ 800,00 in the transaction. At the hearing on remand they testified instead that the bank had written off about $1,135,000 on th bank's accounts. This may or may not have been a loss. The wide variation on the dollor figures testified to by the bank officials must cast some doubt on the accounting by the bank and the reclity of its position. To permit the gross exaggerations at trial was a particular or specific error by counsel to defendant's prejudice. We must conclude that an inadequacy of representation was demonstrated under Strickland with prejudice to defendant.

SUMMARY: Petitioner contends with all the following in this Article 11.07 Habeas Corpus post-conviction challenging the force of a involuntary plea due to violation of petitioner's Constitutional Rights. Under the Due Process Clause and Equal protection and the Sixth Amendment; Fourth Amendment, Fourteenth Amendment; of the ~~Fidur~~ Texas Constitution; Petitioner will show the following as he was prejuiced throughout the hold proceeding in court with the fraudulent practice of spoliation (of records). With that being the case at hand shows as Strickland v. Washington; 466 U.S. 668, 80 L.Ed. 2d 674, 104 S.Ct. 2052 (1984) prejuice prong. Witness all the follow:

"A"  EXIBIT ORIGINAL [word for word on record]
AUTOPSY                                                    "Original report"
BEXAR COUNTY MEDICAL EXAMINER'S OFFICE
7337 LOUISE EXAMINER'S OFFICE
SAN ANTONIO, TEXAS 78229-4565
(210) 335-4000 , Fax (210) 335-4002
Name: Shelly, Pamela Age: 31 Race: W sex: F
CAUSE NO. 2001-0040          Date & Time of Autopsy: 08 JAN 2001
                                                      8:30 a.m.


VINCENT J.M. DIMAJO, M.D.          RANDALL E. FROST, M.D.
Chief Medical examiner             Medical examiner
ROBERT C. BUX, M.D.                SUZANNA E. DANA, M.D.
Deputy cheif medical examiner      Medical examiner
RUTH E. KOHLMEIER, M.D             JAN C. GARAVAGLIA, M.D.
Assistant Medical examiner         Medical examiner

ELIZABETH A. ROUSE, M.D.
Assistant Medical examiner

Dr. Frost is present for the autopsy.

CONCLUSION
It is our opinion that Pamela Shelly, a 31 year old Caucasian female, died as a result of a self-inflicted gunshot wound to the head with massive damage to the skull and underlying brain.

MANNER OF DEATH: Suicide

"6" EXIBIT ORIGINAL [word for word on record]

TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION
"Original report"

REPORT OF INVESTIGATION
THIS REPORT IS THE PROPERTY OF TEXAS RANGER DIVISION.
NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED
OUTSIDE THE AGENCY TO WHICH LOANED

1. QUESTIONABLE DEATH
2. DE WITT COUNTY TX. U.S.
3. PAMELA CURLEE SHELLY, W/F, 07/25/1969, 31 y.o.a.
4. 01/07/2001
(Sunday)

p.24

## SYNOPSIS:

Writer was contacted by CLIFF FOULDS, DeWitt County Sheriff, for assistance with a questionable death investigation. On 01-06-2001, the deceased, Pamela Shelly, WF, DOB 07-25-1969, sustained a gunshot wound to the head. Due to questionable information at the time of the shooting and conflicting reports from medical authorities, writer was asked to attend the autopsy. Same was performed on 01-08-2001 by Dr. ROTH KOHLMEIER, who classified the manner of death as suicide. No further investigation will be conducted by this writer; therefore, the file is closed.

## INVESTIGATORS:

1.1 Marrie Garcia, Sergent, Texas Rangers.
6502 S NEW Braunfels
San Antonio, Texas 78223
(210) 532-2923

1.2 Cliff Foulds, sheriff, DeWitt County Sheriff office
208 E. Live Oak
Cuero, Tx 77954
(361) 275-5734

## CUSTODY OF EVIDENCE

1.1 Evidence 25 color photographs SHELLY's gunshot wound
Date/Time 1/8/01 1:04:00 PM
Address
Location Bexar County Forensic Science Center
By: Marrie Garcia, Sergent, Texas Rangers, "D" Company

Recovery value: $0.00

Note:
Transfer To:                              Transfer Date:
Sherriff Cliff Floulds                    01/09/2001

"C" EXIBIT ORIGINAL (word for word on record)

BEXAR COUNTY                              Original
FORENSIC SCIEWCE CENTER                   report"
INVESTIGATION REPORT

County: DE WITT CO                        DATE: 01-08-2001
                                          TIME: 1050 HRS

OFFICER AT SCEWE
NAME: CHIEF DEPUTY G. EDWARDS
BADGE: 1201
  OF: DEWITT

                    In this original report tells the
                    Case Summary
Jamel. A            Circumstances
Investigator        Observations
                    ADDENDUM

HOBBY Film

"A" EXIBIT ORIGINAL (word for word on record)

"present"

RANDALL E. FROST, M.D
chief medical examiner

ELIZABETH A. PEACOCK
Medical examiner

D. KIMBERLEY MOLINA, MD
Deputy chief Medical examiner

RAJESH P. KANNAM
Medical examiner

JENNIFER J. RULON, M.D.
Medical examiner

WILLIAM D. MCCLAIN
Assistant Medical examiner

## AUTOPSY REPORT
### Amendment

On June 5, 2012 this officer was contacted by investigator Carl Bowen, De Witt County Sheriffs office, regarding this case. According to Investigator Bowen, there is now suspicion that gunshot wound received by the decedent was not self-inflicted and may have been inflicted by another person. Investigator Bowen submitted to this office photographs and other documen-tation for review. After review of documents and discussions with Investigator Bowen, the manner of death is amended to "Undetermined", due to investigative uncertainties about how the wound was sustained. There remain no autopsic features of the wound that would preclude a self-inflicted wound, but a wound inflicted by another person also cannot be exclude.

MANNER OF DEATH: Undetermined.

RANDALL E. FROST, MD

Chief Medical examiner

D. KIMBERLEY MOLINA, M.D

Deputy chief medical examiner

"E" EXIBIT ORIGINAL (word for word on record)

"Present"

STATE BAR OF TEXAS
OFFICE OF THE CHIEF DISCIPLINARY COUNSEL
SAN ANTONIO REGION
TRAVIS PARK PLAZA
711 NAVARRO, SUITE 750
SAN ANTONIO, TEXAS 78205

July 28, 2014

Ronnie Hendrick
Garza East
4250 Highway 202
Beeville, TX 78102

Re: 201402266 Ronnie Hendrick - Neftali J. Villafranca

Stephanie Stolle
Assistant Disciplinary Counsel

Robert Brown
Investigator

SUMMARY: Petitioner notes that the State Bar is coming to a close on this pending investigation on Mr. Neftali J. Villafranca or we speak about the misrepresentation and violation of petitioner (constitutional)

p.28

rights.

## CONCLUSION

Petitioner ~~suffers~~ notes under all in this writ application and has shown that the court cause of vilation of petitioner's constitutional rights were violated. In the involuntary plea forced upon petitioner by the Courts of DeWitt, County violated petitioners Sixth. Amendment, Fourteen -th Amendment to the United States Constitution, and Texas Constitution When by the Court all proceedings are bound by Federal Standards and constitutional rights. Thus, must be spread out on the record. That the Law of the lands Equal Protection of the Law with the Fifth Amendment, Fourt Amendment, and Due process of Law to petitioner is profected. Meaning the collateral estoppel with the embrucery done by a T.V. show Cold Justice commilted upon petitioner is unconstitutional; with the court proceeding in a procedur that was fundulent practice of spoilation. Show that during the hold procedur and proceeding petitioner was prejudiced, so the acusations of the alegede conviction of murder should be remanded back to court for a reversal period.

## PRAYER FOR RELEF

WHEREFORE, PREMISES, petitioner prays this court review all the folling in this Memorandom and remand back to the court for reversal

Pro se

Copy claim C
3rd claim

# COURT OF CRIMINAL APPEALS OF TEXAS
# APPLICATION FOR A WRIT OF HABEAS CORPUS
# SEEKING RELIEF FROM FINAL FELONY CONVICTION
# UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

## INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

Rev. 01/14/14

3rd Claim "C" Prosecutorial Misconduct; Summation
[SUMMING UP]

Request Oral Argument
To contents of this
memorandon
with Exibit
1. Exibit #1 Michel A. Shippard, District Attorney, 24th Judial
District August 1, 2014

# MEMORANDUM OF LAW.

Now comes petitioner and would like to show the court how petitioners constitutional rights have been violated in the 24th District Court, Dewitt County. With the with holding of the evidence in a fraudulent practize of spoti spoilation of records done by the court. Therefore, petitioners Sixth Amendment, Fourth Amendment, Fifth Amendment; and Fourteenth Amendment were violated. As well as petitioner's Due Process Clause and Equal Protection of the United States Constitution of America. As the criminal procedure that was done by Prosecutorial Misconduct by the prosecution, judge, an attorney of Dewitt County; 24th District Court with sheriff's Department. On allowing a mistrial to proceed the proceeding of a Judgment on the Merits. Thus with all this in the following stated petitioner would like to show the court the following to witness:

SIXTH AMENDMENT the amendment to the U.S. Constitution that entitles the accused in a criminal trial the right to a speedy trial by an impartial jury, to be informed of the charges against him or her, to be confronted with witnesses against him or her, to have compulsory process for obtaining witnesses in his or her favor, and to have effective assistance of counsel. Through the process of selective incorporation, each of these rights has been applied to the states under the due process clause of the Fourteenth Amendment. While these rights form the foundation of the accused's right to a fair trial, the accused has been accorded additional rights, such as the right to conduct his or her own defense as necessary to a fair trial under the due process clause

• FOURTH AMENDMENT constitutional amendment guaranteeing the right of persons to be ~~seene~~ secure in their homes and property from unreasonable searches and seizures and consisting of the following elements: (1) the issuance of a warrant upon oath or affirmation; (2) upon probable cause, as determined by a neutral and detached magistrate; and (3) particularly describing the place to be searched and the items or persons to be seized. The Fourth Amendment is most frequently encountered in cases involving the use of illegally seized evidence, or fruits of the poisonous tree, and is applied through the exclusionary rule. It was initially incorporated in the Bill of Rights to counter the abuses from searches conducted without warrants, with general warrants, or with writs of assistance and designed to safeguard the public's legitimate or reasonable expectation of privacy.

• FIFTH AMENDMENT the amendment to the U.S. Constitution, part of the Bill of Rights, that establishes certain protections for citizens from actions of the government by providing (1) that a person shall not be required to answer for a capital or other infamous crimes unless an indictment or presentment is first issued by a grand jury, (2) that no person will be placed in double jeopardy, (3) that no person may be required to testify against himself, (4) that neither life, liberty nor property may be taken without due process of law, and (5) that private property may not be taken for public use, without payment of just compensation.

• FOURTEENTH AMENDMENT one the so-called Civil War Amendments to the Constitution ratified in 1868 shortly after the Civil War ended which guarantees that all persons born in any state of the United States are citizens of that state and of the United States and are guaranteed the privileges and immunities due to citizens of the United States and to due process and

equal protection of the laws.

- CRIMINAL PROCEDURE the process by which the government imposes sanctions for crimes, from the investigation of the crime, through the arrest and trial of the person accused of committing the crime, to the punishment of the convicted criminal. The primary sources of criminal procedure are: statutes governing police activities, court procedures and sentencing matters; and court rules such as the Federal Rules of Criminal Procedure. Constitutional limitations on criminal procedure to protect the rights of defendants are found in state and federal guarantees such as the ban on unreasonable search and seizures, and the privilege against self-incrimination.

- PROSECUTORIAL MISCONDUCT; SUMMATION [SUMMING UP] the final step in a trial, wherein each party's counsel reviews the evidence that has been presented and attempts to show why its position should prevail; also known as CLOSING ARGUMENTS. In a jury trial, this step immediately precedes a judge's instructions to a jury. The party with the burden of proof always closes or sums up last. Therefore, in a civil case, the defendant closes first and then the plaintiff follows. In criminal cases, the ~~proceeding~~ procedure varies ~~among~~ jurisdictions. Fed. R. Crim. P. 29.1 provides that the prosecution closes first, with the defendant following. In most cases, the prosecution is also afforded an opportunity to rebut the defendant's closing as well. A prosecutor has the special burden to prove the state's allegations beyond a reasonable doubt. During summation a prosecutor must not: comment on a defendant's failure to testify, 380 U.S. 609; refer to evidence not in record, 545 F.2d 751; interject personal opinions concerning veracity of witnesses, 543 F.2d 1333; appeal to jury based on passion or prejudice rather than facts, 664 F.2d 911; or imply that the prosecutor believes that the defendant is guilty of the crime charged

558 F.2d 387. A prosecutor cannot be argumentative in his or her closing and "it is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." 295 U.S. 78, 88. Failure of the prosecutor to comply with the above is often referred to as PROSECUTORIAL MISCONDUCT and may result in a mistrial. Still, the prosecutor is entitled to a certain degree of latitude in summation, 553 F.2d 1013, and his or her closing must be viewed in the context of the entire trial rather than in the abstract.

JUDGMENT ON THE MERITS judgment rendered through analysis and adjudication of the factual issues presented, rather than by the existence of a technical or procedural defect that requires one party to prevail. A "judgment on the merits" is binding and issues so adjudged becomes subject to the force of res judicata and collateral estoppel. Judgments not rendered on the merits are frequently considered dismissed without prejudice so that the factual issues may eventually be decided upon.

MISTRIAL a trial terminated and declared void prior to the return of a verdict. A mistrial most commonly arises due to a deadlock in a jury's deliberations (hung jury), but may also be due to some extraordinary circumstance, such as death or illness of a necessary juror or of an attorney. It may also be due to a fundamental error prejudicial to the defendant that cannot be cured by appropriate instructions to the jury, such as the inclusion of highly improper remarks in the prosecutor's summation. It does not result in a judgment for any party, but merely indicates a failure of trial. See 157 S.W. 2d 879, 881. Mistrial in a criminal prosecution may prevent retrial under the

doctrine of double jeopardy, unless due to manifest necessity or required by the intrest of justice.

SUMMARY: Petitioner contends that, if all this proceeded in the procedure during the time of the duration of trial that alone is a violation of petitioner's Constitutional rights. When it's on the record that the judge was going to declare a mistrial; then since complaint to the state Bar on attorney. In a document stated the District attorney saying that petitioner's attorney was able to obtain a mistrial. Therefore, it shouldn't be a question of the procedural misconduct done by the judge, District attorney, and attorney to petitioner. Witness the following cite.

BAUDER v. STATE, 921 S.W. 2d 696 (Tex. Cr. App. 1996)
The Court of Criminal Appeals, Meyers, J., held that: (1) United States Constitution did not preclude retrial, but (2) under Texas Constitution, Successive prosecution is barred after det declaration of mistrial at defendant's request, not only when objectionable conduct of prosecutor was intended to induce motion for mistrial, but also when prosecutor should have known that objectionable event for which he was responsible would require mistrial at defenda-nt's request.
Reverse and Remanded

1. Double Jeopardy -97
Federal double jeopardy principles did not preclude further prosecution of defendant after mistrial was granted based on finding that prosecutor had deliberately adduced testimony of extraneous miscon-

-onduct for purpose of prejudicing defendant unfairly before the jury, absent showing that prosecutor elicited objectionable testimony for purpose of goading defendant into moving for mistrial. U.S.C.A. Const. Amend. 5.

2. Double Jeopardy - 97

Under Texas Constitution, double jeopardy principles bar successive prosecution of declaration of mistrial at defendant's request, not only when objectionable conduct of prosecutor was intended to induce motion for mistrial, but also when prosecutor should have known that objectionable event for which he was responsible would require mistrial at defendant's request. Vernon's Ann. Texas Const. Art. 1 § 14.

3. Criminal Law - 867

Mistrial is extreme remedy for prejudicial event occurring during trial process.

4. Criminal Law - 867

It is considered sufficient response to most well founded objections that material be withdrawn from jury's consideration and, if necessary, that jurors be admonished not to consider it during their deliberations.

5. Criminal Law - 867

Only when it is apparent that objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent jury from being unfairly prejudiced against defendant may motion for mistrial be granted.

6. Double Jeopardy - 96, 97

Ordinarily, when defendant obtain mistrial at his own

request, Double Jeopardy Clause of Texas Constitution does not bar second trial in as much as defendant's motion for mistrial is considered deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact; however, right to trial before the first jury selected is the right to a fair trial before that jury, and, therefore, when prosecutorial misconduct renders trial so unfair that no judicial admonishment can cure it, ensuing motion for mistrial does not result from defendant's free election. Vernon's Ann. Texas Const. Art. 1 § 14.

7. Habeas Corpus - 864(1)

Remand of habeas corpus case was required for determination whether prosecutorial misconduct rendered trial so unfair that, under Texas Constitution, subsequent trial was barred by double jeopardy principles. Vernon's Ann. Texas. Const. Art. 1 § 14.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge

[1] Our previous opinions in this cause are withdrawn. Appellant is charged in County Court at Law Number 8 of Bexar County with the misdemeanor offense of driving while intoxicated. The states' first two attempts to try him for this offense each ended in a mistrial. The second of these occurred when the prosecutor adduced evidence before the jury that appellant committed an act of misconduct other than that charged in the information. Before the state could schedule a third attempt at trial, appellant filed an application

for writ of habeas in the trial court, contending that further prosecution is jeopardy barred under the Texas and United States Constitutions. The habeas judge found that the prosecuting attorney had deliberately adduced testimony of extraneous misconduct for the purpose of prejudicing appellant unfairly before the jury. However, the judge refused to dismiss the prosecution because appellant had moved for the mistrial himself and because the judge did not believe the prosecutor elicited the objectionable testimony for purpose of goading appellant into making a motion for mistrial. The Fourth Court of Appeals affirmed. Bauder v. State, 880 S.W. 502 (Tex. App. – San Antonio 1994). [2] Under the United States Constitution, both of the lower courts are right. It is clear that the Fifth Amendment is not offended by a successive prosecution for the same offense when the earlier proceeding was terminated at the defendant's request unless the attorney representing the government deliberately set out to provoke the defendant's motion for mistrial. Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed. 2d 416 (1982). We have applied this standard of review to double jeopardy claims urged under the United States Constitution, as in Crawford v. State, 703 S.W. 2d 655 (Tex. Crim. App. 1986), and to generic double jeopardy claims, as in Collins v. State, 640 S.W. 2d 288 (Tex. Crim. App. 1982) (panel opinion, rehearing en banc denied), and Anderson v. State, 635 S.W. 2d 722 (Tex. Crim. App. 1982). But we have never specifically addressed the question whether the Texas Constitution applies in exactly the same way as the United States Constitution to mistrial provoked by the prosecution. We granted discretionary review in the instant cause to decide the important question of first impression. Tex. R. App. Proc. 200 (c) (2).

A majority of the panel in the Fourth Court of Appeals considered the matter to have been settled by our opinion in Collins, to which it attributed the proposition, "[T]he Kennedy standard applies in Texas." Bauder, 880 S.W.2d at 503. Of course Oregon v Kennedy all other definitive interpretations of the United States Constitution by the Supreme Court do apply in Texas, just as throught the country. But that does not mean that such interpretations govern the meaning of the Texas Constitution. Because we are not called upon in the instant cause to apply federal constitutional law, therefore, neither the United States Constitution ~~now~~ nor anything the Supreme Court has to say about it is authoritative. On all questions of Texas Law we examine the opinions of other courts, including those of the United States Supreme Court, only in so far as they may reveal the thinking of intelligent jurists on questions of common interest. Heitman v. State, 805 S.W.2d 681 (Tex. Crim. App. 1991) The Texas Constitution provides, in article I section 14, that "[N]o person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

It has long been the law in Texas that a mistrial granted at the defendant's request in a criminal case poses no inhibition under this clause to father prosecution of the same offense in a new proceeding. De Young v. State, 160 Tex. Crim. 628, 274 S.W.2d 406 (1954). A criminal defendant may thus consent to have questions of his criminal liability for one offense resolved in more than one trial. But if he does not consent, the Double Jeopardy Clause requires that his culpability be determined in a single proceeding before the jury first selected to try him, if trial is before a jury, unless it becomes

p.9

manifestly necessary to terminate the proceeding before a verdict is returned in order to assure fairness or efficiency in the trial. Torres v. State, 614 S.W.2d 436, 441 (Tex. Crim. App. 1981) (panel opinion). The question we decide today is whether and under what conditions our Double Jeopardy Clause also bars retrial when a defendant obtain s a defendant obtain a mistrial on account of events deliberately or recklessly brought about by the prosecutor. [3, 4] At least the outset, we emphasize that mistrials are an extreme remedy for prejudicial events occuring during the trial process. Even when a prosecutor intentionally elicits testimony or produces other evidence before the jury which is excludable at the defendant's option, our law prefers that the trial continue. Because tactical decisions to offer prejudicial evidence are a normal and, in most respects, acceptable part of the adversary process, it would be counterproductive to terminate the trial every time an objection is sustained. Marin v. State, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993) Consequently, it is considered a sufficient response to most well-founded objections that the material be withdrawn from jury consideration, if necessary, and that jurors be admonished not to consider it during their deliberations. Barber v. State, 757 S.W.2d 359, 362 (Tex. Crim. App. 1988), cert. denied 489 U.S. 1091, S.Ct. 1559, 103 L. Ed.2d 861; Von Byrkson v. State, 505 S.W.2d 555, 559 (Tex. Crim. App. 1974). [5] the adversary system thus depends upon a belief that the declaration of a mistrial ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given. For this reason our system presumes that judicial admonishment to the jury are efficacious. Waldo v State, 746 S.W.2d

750, 754 (Tex. Crim. App. 1988). Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted. Kemp v. State, 846 S.W. 2d 289, 308 (Tex. Crim. App. 1992), cert. denied 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed. 2d; Gardner v. State, 730 S.W. 2d 675, 696-97 (Tex. Crim. App. 1987), cert. denied 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed. 2d 206. [6] Ordinarily, when a defendant obtains a mistrial at his own request, a second trial is not jeopardy barred because the defendant's motion for mistrial is considered "a deliberate election on his part to forego his valued right to have his guilt or innocence determine before the first trier of fact". United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed. 2d 65 (1978). But we believe that the right to a trial before jury first selected is the right to a fair trial before that jury. And although our system does not guarantee the right to a trial free of errors and mistakes, we think it clear that, when a prosecutor's deliberate or reckless conduct renders trial before the jury unfair to such a degree that no judicial admonishment can cure it, an ensuing motion for mistrial by the defendant cannot fairly be described as the result of his free election.

The Texas Double Jeopardy Clause, like its federal counterpart, is meant to restrain the government from subjecting persons accused of crime to the mental, emotional, and financial hardship of repeated trials for the same offense. Accord Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24, 2 L.Ed. 199 (1957). Accordingly, when the government, acting through its representatives, purposefully forces termination of a trial in order to repeat it later under more

favorable conditions, we agree with the Supreme Court that the Double Jeopardy Clause is violated. But, unlike the Supreme Court, ~~that~~ we do not think the prosecutor's specific intent is a relevant aspect of the inquiry.

For example, when a prosecuting attorney, believing that he cannot obtain a conviction under the circumstances with which he is confronted, and given the admissible evidence then at his disposal, deliberately offers objectionable evidence which he believes will materially improve his chances of obtaining a conviction, and the law considers the prejudicial effect of such objectionable evidence to be incurable even by a firm judicial admonishment to the jury, it seems to us that the prosecutor's specific intent, whether to cause a mistrial or to produce a necessarily unfair trial or simply to improve his own position in the case, is irrelevant. In our view, putting a defendant to this choice, even recklessly, is constitutionally indistinguishable from deliberately forcing him to choose a mistrial.

We therefore hold that a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request. Under this rule, the prosecutor is not accountable for mistrials when the trial judge need not have granted the defendant's motion. But he is accountable for mistrials properly granted the ~~defendant's~~ trial judge when the events making a mistrial necessary were of his own deliberate or reckless doing. Under such circumstance, mistrial is not necessary concession to the exigencies

of trial, nor the unavoidable consequence of events beyond the prosecutor's control, but an immediate result of conditions produced by the government's representative which forces upon a defendant the expense and embarrassment of another trial unless he is willing to accept an inevitably unfair one. When this happens, we think the government should bear responsibility for denying the defendant his right, secured by the Texas Double Jeopardy Clause, to be tried in a single proceeding by the jury first selected.

Our decision to bar retrial under slightly more expansive conditions than those allowed by the United States Supreme Court is based on two important considerations. In the first place, we do not perceive a distinction of constitutional significance between conduct of a prosecuting attorney in which he is aware is reasonably certain to result in a mistrial. Making the constitutional right of a criminal right of a criminal defendant to turn upon such a fuzzy and imponderable distinction as whether the prosecutor actually intended the trial to be determined or, being aware that his conduct creates a risk that a mistrial is reasonably certain to occur, consciously disregards that risk seems to us far too insensitive a criterion for decision in these cases. In short, we do not believe that the purpose of the constitutional right here in issue really has anything to do with the prosecutors' specific intent.

Secondly, there are practical advantages of a less subjective rule than one which necessarily depends upon proof of the prosecutors' specific purpose. The most obvious of these, acknowledged by the Supreme Court in Oregon v. Kennedy and convincingly explicated in the instant cause by the dissenting opinion of justice Butts

in the lower appellate court, is that the conditions under which retrial is barred will generally be clearer when the prosecutor's subjective intent is not an issue, permitting a more certain application of the rule in most cases. Gauging the subjective intent of a prosecutor ~~$~~ is not an easy thing to do. And although we do it in a wide variety of contexts where it is ~~univer~~ universally acknowledged that subjective intent is and ought to be the important issue, e.g. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that is really not the case here. As we see it, there is no wisdom in a double jeopardy standard of decision which is at once difficult to apply and does little to promote intrest protected by the Double Jeopardy Clause.

It bears repeating, however, that conditions calling for the declaration of a mistrial before submission of a case to the jury should be considered very unusual in any adversary system. Because curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted under Texas Law. Accordingly, the line between legitimate adversarial gamesmanship and manifestly improper prosecutorial methods should be difficult for most prosecuting attorneys to cross unless they do it on purpose. Nevertheless, we hold that an attorney representing the State in a criminal action who does manage to cross the line, either deliberately or recklessly, must then forego any further prosecution for the same offense if the trial judge properly grants mistrial at the defendant's request. [7] Of course, we express no opinion as to whether the prosecutor crossed that line in instant cause. Nor do we have an opinion

p.14

whether the cause should be remanded to the habeas court for another evidentiary hearing on this essentially factual question, for additional judicial factfindings, or both. *Arichia v. State*, 834 S.W.2d 357 (Tex. Crim. App. 1992). We do, however, hold that the Fourth Court of Appeals did not employ the legal analysis appropriate to appellant's Texas constitutional claim. We, therefore, *reverse* its judgment and remand the cause for reconsideration in manner consistent with this opinion.

WHITE an KELLER, JJ. dissent.

CLINTON, JUDGE concurring,

While we need not construe the Texas Constitution differently, there is simply no getting around the fact that we construe it independently. "Even if we find the Federal example persuasive, and adopt it as our own it is still this court that construes" the provisions of our constitution. *Johnson v State*, 912 S.W.2d 227, 238 (Tex. Cr. App. 1995) (Clinton, J., dissenting). BAIRD, Judge, concurring

When a mistrial is granted on the basis of prosecutorial misconduct, the United States Constitution bars retrial only when the misconduct was intended to goad the defendant into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). However, as Brennan and Marshall noted *Kennedy* did not prevent state courts from interpreting their state constitutions to provide a greater standard of protection. *Id.*, 456 U.S. at 678-79, 102 S.Ct. at 2091. We embrace this question today and hold that the Texas Constitution does, in fact, provide a greater standard of protection.

Maloney, Judge, concurring

Today a majority of the court holds that the rule of law

pronounced in Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed. 2d 416 [1982], applying the federal double jeopardy clause is not the only standard under which the state may be precluded from retrial when it has intentionally committed error resulting in mistrial; but that the double jeopardy clause of the Texas constitution, when the prosecutor is either intentional or reckless in causing a mistrial, will also prevent retrial. The court defines recklessness as it is defined in the Penal Code, as being "aware but consciously disregard[ing] the risk that an objectionable event from which [the prosecutor] was responsible would require a mistrial at the defendants request". Majority opinion at 699. See and compare Tex. Penal Code Ann. § 6.03(c).

The dissent takes issue with this holding and with the rule that the Texas Constitution provides greater protection than the double jeopardy clause of the federal constitution. The federal double jeopardy provision derived from the common law notions of autrefois acquit and autrefois convict.

The origin and history of the Double Jeopardy Clause are hardly a matter of dispute. See generally [U.S. v.] Wilson, supra, [420 U.S. 332] at 339-340 [, 95 S.Ct. 1013, 1019-1020, 43 L.Ed.2d 232 [1975]]; Green v. United States, 355 U.S. 184, 187-188 [, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199] [1957]; id. at 200 [, 78 S.Ct. at 230] (Frankforter, J., dissenting). The constitutional provision had its origin in the three common-law pleas of autrefois acquit, autrefois convict, and pardon. These three pleas prevented the retrial of a person who had previously been acquitted, convicted or pardoned for the same offense. United States v. Scott, 437 U.S. 82, 87, 89 S.Ct. 2187, 2192, 57 L.Ed.2d 65 [1978].

p.108

The double jeopardy clause contained in the fifth Amendment to the United States Constitution reads: "No person shall... be subject for the same offense to be twice put in jeopardy of life or limb. [.]" Article I, Section 14 of the Texas constitution provides that No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in court of competent jurisdiction. The Interpretive Commentary to Article I, Section 14, although not authority, is instructive in explaining that the Texas Constitution is broader than the common Law:

The guaranty in this Section of the Texas Constitution is broader in scope [than the common Law], for not only can a person not be put on trial a second time for an offense of which he has once been acquitted or convicted, but he may not be put on trial a second time for an offense of which he has once been placed in jeopardy. Hence, jeopardy, meaning danger or hazard, can be based upon a prosecution discharged for valid causes without a verdict, while former conviction and acquittal are based upon verdicts rendered. Anderson v. State, 92 Tex. Com. 99, 242 S.W. 1047 (1922). A person is in jeopardy, then, when he is put on trial before a court of competent jurisdiction on an indictment or information sufficient to sustain conviction, a jury has been charged with his deliverance, the indictment or information read to the jury, and the plea of the accused heard. See Johnson v. State, 73 Tex. Crim. 133, 164 S.W. 833 (1914); Steen v. State, supra.

TEX. CONST. art. I, § 14 interp. commentary (Vernon 1984)

MANSFIELD, Judge, dissenting

The habeas judge found that while the state did adduce testimony of the extraneous criminal act improperly in order to prejudice the jury against appellant, it did not do so with the intent to goad appellant into moving for a mistrial. Furthermore, appellant moved for the mistrial. The habeas judge refused to dismiss the prosecution against appellant. The Fourth Court of Appeals affirmed. Bauder v. State, 880 S.W.2d 502 (Tex. App.—San Antonio 1994).

The Fifth Amendment to the United States Constitution provides: "No person shall be held to answer for capital, or otherwise infamous crime, unless on a pres-intment or indictment of Grand Jury except in case arising in the land or naval forces, or in the Millitia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation"

SUMMARY: Meaning if on said date Petitioner was not arrested for the accusation do to the reasons of GSR test on pistol officer. Meaning proof of not shooting the weapon therefore it was ruled a suicide in 2001. Why is it that do to the procedural misconduct ~~of summation~~ summation [summing up] and the withholding of evidence that would be in petitioners' favor was withheld. All behind a T.V. show Cold Justice that's why petitioners' constitutional rights were violated in the

pg 8

24th District Court, DeWitt County, Witness the following (word for word on record)

EXIBIT #1

MICHAEL A SHEPPARD
DISTRICT ATTORNEY
24TH JUDICIAL DISTRICT
August 1, 2014

To whom it may concern:

This letter is written regarding Mr. Tai Villafranca representation of Ronnie Joe Hendricks in a ~~murder~~ murder case in DeWitt County Texas.

I am the district attorney for the 24th Judicial District which includes in its jurisdiction, DeWitt County.

The murder case against Hendricks was a very high profile case. Mr. Villafranca was diligent in his representation of Mr. Hendricks and spoke with my office on numerous occasions about the evidence, discovery venue and plea offers among other things. It was clear to me that Mr. Villafranca was prepared, knew the strengths and weaknesses of the case and had developed his defense as best as could be expected for a very difficult case. We began to pick a jury in September of 2013. We were unsuccessful in picking a jury. Mr. Villafranca was able to obtain a mistrial for his client. The trial court reset the case and Mr. Villafranca vigorously argued for a change of venue which the court was considering. A couple of days after the mistrial Mr. Villafranca negotiated a plea 22 years in prison for his client which,

p.19

in my opinion, is a light sentence for murder. Mr. Villafranca had postured the case to his client's maximum benefit and he was able to get such a light offer because of the mistrial, the prospect of a 6 month delay and the State's concern about what might happen to key out of state witnesses with a delay of at least 6 months.

The case had originally been written off as a suicide but had been developed as a murder case due, in part, to admissions that Hendricks made to witnesses, on recorded jail telephone lines and to officers - all long before Mr. Villafranca was his attorney.

In addition, in the time since the murder, Mr. Hendricks had engaged in serious assaults against other women in scenarios very similar to the murder case and that evidence had been thoroughly developed.

In my opinion, had Mr. Hendricks been convicted, based on his criminal record and history of seriously abusing women, he would have received a sentence well in excess of 50 years in the penitentiary. I base this opinion on the seriousness of the crime and the track record of DeWitt County juries in cases on this type.

Further, it is my opinion that Mr. Hendricks would have been convicted. The evidence had been developed in such a way that it was extremely unlikely that a jury would find that the victim had, in fact, committed suicide leaving only murder as the alternative.

SUMMARY: Petitioner notes you can very well see the procedural misconduct in the held matter meaning throws the prosecuting attorney on petitioner case. Along with the judge and attorney that withheld the original evidence from 2001, thus cause of T.V. shows embracery meaning Cold Justice

p.20

since it was living on T.V. telling viewers no the new session open with a cold case in DeWitt County. Therefore you cannot get around the fact that if it was a mistrial obtained by petitioner lawyer and he knew petitioner wasn't going to ever get a fair trial why didn't he submit a motion for dismissal. witness the following.

2012 TEX. APP. LEXIS 10240

CRIMINAL LAW + PROCEDURE > SEARCH + SEIZURE > EXCL-USIONARY RULE > GENERAL OVERVIEW

See Tex. Code. Crim. Proc. Ann. art. 38.23. (2005)

CRIMINAL LAW + PROCEDURE > APPEALS > STANDARD OF REVIEW > ABUSE OF DISCRETION > EVIDENCE > PROCE-DURAL CONSIDERATIONS > RULINGS ON EVIDENCE

A trial court's ruling concerning the admission or exclusion of evidence may not be disturbed on appeal unless abuse of discretion is shown.

CRIMINAL LAW + PROCEDURE > APPEALS > DEFERENTIAL REVIEW > CREDIBILITY + DEMEANOR DETERMINA-TIONS

When reviewing trial judge's ruling on a motion to supress, the appellate court views all the evidence in a light most favorable to the trial judges ruling. The appellate court affords almost total deference to a trial judge's determination of historical facts when they are supported by the record. The prevailing party is entitled to the strongest legitimate views of the evidence. The appellate court affords almost total deference to the trial judge's ruling on mixed questions of

law and fact that do not depend on an evaluation of credibility and demeanor. All purely legal questions are reviewed de novo.

## CRIMINAL LAW & PROCEDURE > SEARCH & SEIZURE > EXCLUSIONARY RULE > RULE APPLICATION & INTERPRETATION

Under Tex. Code Crim. Proc. Ann. art. 38.23 (a), evidence is not obtained in violation of a provision of law if there is no causal connection between the illegal conduct and the acquisition of the evidence.

### Standard of Review

A trial court's ruling concerning the admission or exclusion of evidence of evidence may not disturbed on appeal unless an abuse of discretion is shown. Ramos v. State, 245 S.W. 3d 410, 418 (Tex. Crim. App. 2008). When reviewing a trial judge's ruling on a motion to suppress, we view all the evidence in a light most favorable to the trial judge's ruling. State v Johnston, 336 S.W. 3d 649, 657 (Tex. Crim. App. 2011) (citing State v. Garcia-Cantu, 253 S.W. 3d 236, 241 (Tex. Crim. App. 2008)). We afford almost total deference to a trial judge's determination of ~~historical~~ historical facts when they are supported by the record. Id. (citing Guzman v. State, 955 S.W. 85, 89 (Tex. Crim. App. 1997)). The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence", Garcia-Cantu, 253 S.W. 3d at 241. We also afford almost total deference to the trial judge's rulings on mixed question of law and fact when the resolution of those questions depends on an evaluation of credibility and demeanor. Guzman, 955 S.W. 2d at 89. We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. Id. All purely legal questions are ~~revi~~ reviewed

de novo. *Kothe v. State*, 152 S.W. 3d 54 6-23.

## Causal Connection

Under article 38.23 (a), " evidence is not 'obtained... in violation' of a provision of law if there is no causal connection between the illegal conduct and the question of the evidence." *Gonzales v. State*, 67 S.W. 3d 910, 912 (Tex. Crim. App. 2002) Therefore, in order for Roade's test results to be excluded, there must be a causal connection between an "[improper warning or lack thereof] and [his] decision to submit to a breath test". *Sandoval v. State*, 17 S.W. 3d 792, 796 (Tex. App. - Austin 2000 pet. ref'd) (quoting Tex. Dept. of Pub. Safety v. Bulfe, 986 S.W. 2d 823 (Tex. App. - Austin 1999. no pet.)),

SUMMARY: Which mean under this procedural misconduct done by the court 24th Judicial District, DeWitt County did not show proof then along bring evidence from 2000 to compare with evidence in 2012.

Article 38.23 of the Texas Code of Criminal Procedure states, in pertinent part, as follows;
(a) No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art 38.23 (west 2005) (Throughout the remainder of this opinion, we will cite this provision of the Code of Criminal Procedure simply as "article 38.23").

SUMMARY, Meaning if it was a mistrial why did it go that far

witness the following from Code of Criminal Procedure

CODE OF CRIMINAL PROCEDURE
CHAPTER TWENTY-EIGHT: MOTIONS,
PLEADINGS AND EXCEPTIONS

ART. 28.01 [522] [587] [576] PRE-TRIAL

Sec. 1. The Court may set any criminal case for pre-trial before it set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing. The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding. The pre-trial hearing shall be to determine any of the following matters:

(1) Arraignment of the defendant, if such be necessary; and appointment of counsel to represent the defendant, if such be necessary;

(2) Pleadings of the defendant;

(3) Special pleas, if any;

(4) Exceptions to the form or substance of the indictment or information;

(5) Motion for continuance either by the State or defendant; provided that grounds for continuance not existing or not known at the time may be presented and considered at any time before the defendant announces ready for trial;

(6) Motion to suppress evidence - When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court;

p.24

(7) Motions for change of venue by the state or the defendant; provided, however, that such motions for change of venue, if overruled at the pre-trial hearing, may be renewed by state or the defendant during the voir dire examination of the jury;

(8) Discovery;

(9) Entrapment; and

(10) Motion for appointment of interpreter

Sec. 2. When a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters. The record made at such pre-trial hearing, the rulings of the court and the exceptions and objections thereto shall become a part of the trial record of the case upon its merits.

SUMMARY: Petitioner, contends that under this Article 28.01 if it was held all evidence would have been presented. thus, with that being said how is it possible for the 24th Judicial District Court, DeWitt County not to proceed in the right manner. Once again its a violation of petitioners Fourth Amendment, Fourteenth Amendment, and Sixth Amendment with Due Process Clause and Equal Protection. Witness the following cite.

HOBBY

<u>Ex parte Peterson</u>, 117 S.W. 3d 804 (Tex. Crim. App. 2003)

In prosecution for possession of cocaine with intent to deliver and possession of cocaine, a mistrial was declared during testimony of State's first witness, based on State's ~~failure~~ failure during discovery to produce videotape of traffic stop and audio tapes of undercover officer's telephone conversations with defendant. Thereafter, defendant filed pre-trial habeas corpus application, alleging a retrial would violate his federal and state constitutional rights against double jeopardy. The 219th Judicial District Court, Collin County, Curt B. Henderson, J., granted habeas relief on the possession with intent to deliver count but denied relief on the simple possession count. Both State and defendant appealed. The Dallas Court of Appeals affirmed. State's petition for discretionary review was granted. The Court of Criminal Appeals held that: (1) Under the Double Jeopardy Clause of Texas Constitution, a prosecutor's conscious disregard for a substantial risk that the trial court would be required to declare a mistrial is relevant when determining whether a retrial is barred, and (2) remand was required, for reconsideration of the state constitutional double jeopardy claim under a three-part test in light of objective factors relevant to assessing the prosecutor's mens rea.

VACATED AND REMANDED

1. Double Jeopardy - 6

The Double Jeopardy Clause of both the Fifth Amendment and of the Texas Constitution protect a criminal defendant from repeated prosecutions for the same offense. U.S.C.A. Const. Amend. 5; Vernons Ann. Texas Const. Art. 1 4 14.

2. Double Jeopardy - 96, 99

Double Jeopardy principles do not forbid multiple trials of simple criminal charge if the first trial resulted in a mistrial that: (1) was justified under the manifest necessity doctrine, or (2) was requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial. U.S.C.A. Const. Amend. 5; Vernon's Ann. Texas Const. Art. 1, + 14.

3. Double Jeopardy - 97

Only where the government conduct in question was intended to goad the defendant into moving for a mistrial may a defendant raise the bar of federal double jeopardy to a second trial after having succeeded in aborting the first trial on his own motion. U.S.C.A. Const. Amend. 5.

4. Double Jeopardy - 96

If the defendant's motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial, then he exercised his free choice in requesting the mistrial, and the Double Jeopardy Clause of the Texas Constitution does not bar retrial. Vernons Ann. Texas Const. Art. 1+14.

5. Double Jeopardy - 96, 97

In analyzing whether the Double Jeopardy Clause of the Texas Constitution bars retrial after a defendant's motion for mistrial has been granted, the courts conducts the following three-part analysis: (1) Whether manifestly improper prosecutorial misconduct provoked the mistrial; (2) whether a mistrial was required because the prejudice produced from that misconduct could not be cured by an instruction to disregard; and (3) whether the prosecutor engaged in the misconduct with the intent to goad the defendant into requesting a mistrial or with conscious disregard for substantial risk that the trial court would be required to declare a mistrial. Vernon's Ann. Texas Const. Art. 1+

P. 27

14.

6. Criminal Law - 700 (17)

"Prosecutorial misconduct" reasonably reaches only that conduct which is qualitatively more serious than simple error, and cannot be an intentional flouting of known rules or laws.

7. Double Jeopardy - 97

If the law itself is unsettled or the application of the law in the particular situation is debatable, prosecutor's conduct which causes a mistrial cannot be said to be manifestly improper, and thus, the inquiry ends as to whether the Double Jeopardy Clause of the Texas Constitution bars retrial after a defendant's motion for mistrial has been granted. Vernon's Ann. Texas as Const. Art. 1, + 14.

8. Criminal Law - 1169.5 (1)

Violations of evidentiary rules and provisions are generally curable with an instruction to disregard.

9. Double Jeopardy - 97

To erect a double jeopardy bar under the Texas Constitution after a defendant's motion for mistrial has been granted, it is not sufficient that the prosecutor's incurably prejudicial misconduct was the result of in advertence, sloppiness, or even simple negligence. Vernon's Ann. Texas Const. Art. 1, + 14.

10. Habeas Corpus - 715.1

A defendant applying for writ of habeas corpus to bar a retrial, after the defendant's motion for mistrial was granted at the first trial, must present sufficient evidence to prove his double jeopardy claim by a preponderance of the evidence. U.S.C.A. Const. Amend. 5, Vernons' Ann. Texas Const. Art. 1, + 14

11. _Double Jeopardy_ -97

When determining whether the Double Jeopardy Clause of the Texas Constitution bars retrial after defendants' motion for mistrial was granted at the first trial, trial and appellate courts should focus primarily upon the objective facts and circumstances surrounding the events which led to the mistrial in deciding whether the prosecutors' alleged misconduct was both manifestly improper and committed with the requisite intent or recklessness; Vernon's Ann. Texas Const. Art. 1, § 14.

12. _Criminal Law_ - 1086.1

Trial courts should "show their work" so that their ultimate factual and legal conclusions are clear to the parties and to reviewing courts.

13. _Double Jeopardy_ -97

Some of the objective facts and circumstances that trial and circum-stances that trial and appellate courts might consider in assessing the prosecutors' mens-rea, when analyzing whether the Double Jeopardy Clause of the Texas Constitution bars retrial after a defendant's motion for mistrial has been granted, including, but are not limited to: (1) whether prosecutorial misconduct was a reaction to abort a trial that was going badly for the state; (2) whether misconduct was repeated despite admonitions from the trial court; (3) whether prosecutor provided a reasonable, good faith explanation for the conduct; (4) whether the conduct was clearly erroneous; (5) whether there was a legally or factually plausible basis for the conduct, despite its ultimate impropriety; and (6) whether prosecutors' actions leading up to mistrial were consistent with inadvertence, lack of

judgment, or negligence, or whether they consistent with intentional or reckless misconduct. Vernon's Ann. Texas Const. Art. 1, §14,

## 14. Criminal Law — 1144.1, 1147

In reviewing a trial court's decision, appellate courts review the facts in the light most favorable to the trial judge's ruling, and should uphold it absent an abuse of discretion.

## 15. Habeas Corpus — 845

In reviewing a trial judge's decision to grant or deny relief on a petition for writ of habeas corpus, the appellate court affords almost total deference to the habeas trial judge's determination of the historical facts supported by the record, especially when the fact findings and are based on an evaluation of credibility and demeanor, however, if the habeas trial court's ruling is not supported by the record, the appellate court may make contrary findings.

## 16. Criminal Law — 1158(1)

Reviewing courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's findings are based on an evaluation of credibility and demeanor.

## 17. Criminal Law — 553

The trial court may accept or reject any or all of any witness's testimony.

## 18. Habeas Corpus — 799

In any habeas corpus hearing, a trial court may enter oral or written findings of fact, which are especially helpful if the trial court rejects unrebutted testimony as incredible or unworthy of belief.

19. Criminal Law - 1158(17)

The appellate court affords almost total deference to a trial court's ruling on "application of law to facts questions", also known as "mixed questions of law and fact", if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.

20. Criminal Law - ~~1158~~ 1139

Appellate courts review de novo those mixed questions of law and fact that do not depend upon credibility and demeanor.

21. Criminal Law - 1158(1)

Although reviewing courts should grant deference to implicit factual findings that support the trial court's ultimate ruling, they cannot do so if they are unable to determine from the record what the trial court's implied factual findings are.

## I.

[1,2] Both the Double Jeopardy Clause of the Fifth Amendment and of Art. 1, section 14 of Texas Constitution "protect a criminal defendant from repeated prosecutions for the same offense." Although a defendant has "valued right to have his trial completed by a particular tribunal", neither constitutional provision guarantees that the state "will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." Thus, double jeopardy principles do not forbid multiple trials of a single criminal charge if the first trial resulted in a mistrial that: (1) was justified under the manifest necessity doctrine; or (2) was requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial.

It is the second-prong - a mistrial requested by the defendant who asserts that he was compelled to do so because of prosecutorial

misconduct — that is at issue in the present case. The underlying principle is that a mistrial which the defense freely chooses to request does not bar retrial. A mistrial that the defense is compelled to request because of manifestly improper prosecutorial conduct may, under certain circumstances, bar retrial.

## A. FEDERAL DOUBLE JEOPARDY PRINCIPLE BAR RETRIAL WHEN THE PROSECUTOR INTENDED TO GOAD THE DEFENDANT INTO REQUESTING A MISTRIAL

The United States Supreme Court has long recognized that even if a mistrial is consented to or requested by the defendant, double jeopardy will bar a retrial under some limited circumstances. In United States v. Dinitz, the Supreme Court held that "the Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial request and thereby the subject defendants to the substantial burdens imposed by multiple prosecutions." Although that statement seemed relatively clear, the court immediately added that the Double Jeopardy Clause "bars retrials were bad-faith conduct by judge or prosecutor" ... threatens the 'harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford to afford the prosecution a more favorable opportunity to convict' the defendant." These two statements created confusion: did double jeopardy bar retrial only for "government actions intended to provoke mistrial request" or also for "bad faith conduct" or "harassment" by the judge or ~~prosecu~~ prosecutor? [3] In Oregon v. Kennedy, a divided Supreme Court resolved this confusion and held that "[o]nly where the governmental conduct in question is intended to 'goad'

the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." In Kennedy, the state charged the defendant with theft of an oriental rug. The prosecution called an expert on Middle Eastern rugs to testify about the value and indetity of the stolen rug. During cross-examination and in an attempt to establish the witness' bias, defense counsel asked the expert if he had filed criminal charges against Kennedy.

## B. UNDER BAUDER, TEXAS' DOUBLE JEOPARDY PROVISION ALSO BARS RETRIAL WHEN PROSECUTORS RECLESS MISCONDUCT REQUIRES A MISTRIAL

For fourteen years, this court followed the federal double jeopardy standard set out in Kennedy. In Bauder v. State (Bauder I), however, this court held that, although the double jeopardy concerns in both constitutions were the same, the Kennedy, federal double jeopardy standard did not necessarily provide the outermost limits of a defendants right under the corresponding Texas constitution provision. Thus, this court extended the Kennedy double jeopardy bar to include both those situations in which the prosecutor specifically intended to goad the defendant into requesting a mistrial, and those in which "the prosecutor was aware [OF] but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." Thus, either "intent to goad" or "conscious awareness of the risk of a required mistrial" suffices under Bauder I.

[4] Thus, under Bauder II, the proper inquiry is whether the defendant was required to move for a mistrial because the

prosecutor deliberately or recklessly crossed 'the line between legitim -ate adversarial gamesmanship and manifestly improper methods that rendered trial before jury unfair to such a degree that no judicial admonishment could have cured it [.] On the other hand if the defendant's "motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial", then he exercised his free choice in requesting the mistrial and double jeopardy does not bar retrial. In State v. Lee, this court declined to abandon the Bauder stand -ard. Instead, we reaffirmed that it is only when the defendant is required to move for a mistrial "because the prosecutor deliberately or recklessly crossed 'the line between legitimate adversarial game- -smanship and manifestly improper methods'.... that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it" that the Texas double jeopardy provision bars a retrial. In Lee, the Court reversed the trial court and court of appeals which had both held double jeopardy barred a retrial because both lower courts "failed to take into account the appropriate substantive law when assessing the prose- -cutors' mental state." [5-8] In sum, under Kennedy or Bauder and its progeny, trial and appellate court analysis: 1) Did manifestly improper prosecutorial misconduct prov- -oke the mistrial? 2) Was the mistrial required because the prejudice produced from that misconduct could not be cured by an instructi -on to disregard? And 3) Did the prosecutor engage in that conduct with the intent to goad the defendant into requesting a mistrial (Kennedy standard) or with conscious disregard for a substantial

risk that the trial court would be required to declare a mistrial (Bauder standard)? [¶] To erect a jeopardy bar, it is not sufficient that the prosecutor's inevitably prejudicial misconduct was the result of inadvertance, sloppiness, or even simple negligence. A prosecutor's blunder that precipitates a successful motion for mistrial does not bar a retrial. As we explained in Bauder II blunders, even manifestly prejudicial blunders, act such as a trigger for a defendants "free choice" mistrial request because of "ordinary reversible error" based on prosecutoral misconduct. It is, after all, the right to appeal, not the double jeopardy clause, that protects defendants from the error. "The double jeopardy clause serves not to punish prosecutional misconduct; it simply ensures that the defendant, not the government gets to choose whether to go to verdict". The third prong, the prosecutor's intent or recklessness, is the most problemative. As noted by Justice Powell in Kennedy, a persons mens rea is frequently difficult to divine. Intent or recklessness is rarely clear-cut. No one is immune to mistakes or lapses in judgment. Especially during the "rough and tumble" of a jury trial, courts must expect that much rule-violating conduct is unplanned, inadvertent, or impulsive. But just as a dog knows the difference between being kicked and being stumbled over, judges can distinguish between intentional or reckless misconduct and inadvertent or negligent mistakes.

C. UNDER EITHER FEDERAL OR TEXAS DOUBLE JEOPARDY PROVISIONS, THE DEFENDANT MUST PROVE HIS CLAIM BY A PREPONDERANCE OF EVIDENCE

[10] In raising a Kennedy/Bauder double jeopardy claim on a pretrial writ of habeas corpus, the burden of proof is on the habeas applicant, as it is in any habeas corpus proceeding. Thus, the defendant must present sufficient evidence to prove his double jeopardy claim by a preponderance of the evidence. That means that the defendant must satisfy all three prongs of the analysis set out above.

[11,12] Trial and appellant courts should focus primarily upon the objective facts and circumstances surrounding the events which led to the mistrial in deciding whether the prosecutors' alleged misconduct was both manifestly improper and committed the requisite intent or recklessness. Although it is not legally required, a trial judge is well-advised to set out his fact findings on the record in support of his ruling on a Kennedy/Bauder double jeopardy motion. As we recently stated in a different context, courts should "show their work" so that their ultimate factual and legal conclusions are clear to the parties and to reviewing courts. [13] Some of the objective facts and circumstances that trial and appellate courts might consider in assessing the prosecutors mens rea include, but are not limited to: 1) Was the misconduct a reaction to abort a trial that was "going badly for the State"? In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal. 2) Was the misconduct repeated despite admonitions from the trial court? 3) Did the prosecutor provide a reasonable "good faith" explanation for the conduct? 4) Was the conduct "clearly erroneous"? 5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety? 6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with

intentional or reckless misconduct? [14-20] In reviewing the trial court's decision, appellate courts review the facts in the light most favorable to the trial judge's ruling and should uphold it absent and abuse of discretion. Reviewing courts, including this court, should "afford almost total deference to a trial court's determination of the historical facts that the record supports; especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." We also afford that same level of deference to a trial court's ruling on "'application of law to fact question', also known as 'mixed question'; also known as 'mixed questions'; also known a 'mixed questions of law and fact'; if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." But appellate courts review de novo those "mixed questions of law and fact" that do not depend upon credibility and demeanor. Although reviewing courts should also grant deference to "implicit factual findings" that support the trial court's ultimate ruling, they cannot do so if they are unable to determine from the record what the trial court's implied factual findings are. Legislative action at the time of these early constitution also supports the views that mistrials had no double jeopardy implications. For example, the 1856 Code of Criminal Procedure provided:

Art. 18 No person for the offense can be put in jeopardy of life or limb. This is intended to mean that no person can be subjected to a second prosecution for the same offense, after having been once prosecuted in a Court of competent jurisdiction and duly convicted.

Art. 19 The foregoing article will exempt no person from a second trial, who has been convicted on an illegal instrument or informat-

p.37

ion, and the judgment thereupon arrested, nor where a new trial has been granted to the defendant, nor where a jury has been discharged without rendering a verdict, nor for any case other than that of a legal conviction. Art.20 By provisions of the Constitution, an acquittal of the defendant exempts him from a second trial, or a second prosecution for the same offense, however, irregular the proceedings may have been; but if the defendant shall have been acquitted upon trial, in a Court having no jurisdiction of the offense, he may, nevertheless, be prosecuted again in a Court having jurisdiction. See also state v. Lee, 15 s.w.3d at 927-31, 928.

## CONCLUSION

With all this stated and shown how petitioner Constitutional rights have been violated in the 24th District Court, DeWitt County. With the holding of the evidence in a fraudlent practice of spoilation Pot records? done by the court. Therefore, petitioners Sixth Amendment, Fourth Amendment, Fifth Amendment; and Fourteenth Amendment were violated. As well as petitioner's Due Process Clause and Equal protection of the United States Constitution of America. As the criminal procedure that was done by Prosecutoral Misconduct by the prosecution, judge, an attorney of DeWitt, county; 24th District Court with Sheriff Department. On allowing a mistrial to proceed the proceeding of a Judgment on the Merits.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES; Petitioner prayes that the court hold and evidentary hearing under Habeas Corpus review and acuit the Accusation

petitioner Pro Se